Tina Marie PHILLIPS, Billy Don Phillips *v.* ARKANSAS
DEPARTMENT of HUMAN SERVICES

CA 03-622                                                      158 S.W.3d 691

Court of Appeals of Arkansas
Divisions I, II and IV
Opinion delivered March 31, 2004

*Janet L. Bledson*, attorney *ad litem*.

*Gary Allen Turner*, for appellee.

OLLY NEAL, Judge. This is an appeal from the Juvenile Division of the Benton County Circuit Court, terminating appellants' parental rights as to their minor child, J.P. On appeal, appellants do not challenge the sufficiency of the evidence used to terminate their parental rights; instead, they contend that the trial court committed reversible error because it failed to hold a permanency planning hearing. We affirm.

■ The standard of review in termination of parental rights cases is well-settled.

> Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Crawford v. Department of Human Services*, 330 Ark. 152, 951 S.W.2d 310 (1997). Pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2002), the facts warranting termination of parental rights must be proven by clear and convincing evidence. In reviewing the trial court's evaluation of the evidence, we will not reverse unless the trial court clearly erred in finding that the relevant facts were established by clear and convincing evidence. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). Clear and convincing evidence is the degree of proof that will produce in the fact-finder

a firm conviction regarding the allegation sought to be established. *Id.* Furthermore, we will defer to the trial court's evaluation of the credibility of the witnesses. *Crawford v. Department of Human Services, supra.*

*Wright v. Arkansas Dep't of Human Servs.*, 83 Ark. App. 1, 3, 115 S.W.3d 332, 333 (2003).

The facts are that on October 10, 2002, J.P. was with appellant Tina Marie when she was arrested at Wal-Mart for shoplifting. Appellant Billy Don did not accompany the family to Wal-Mart, but arrived to retrieve his son shortly after Tina Marie's arrest. The following day, October 11, 2002, the Arkansas Department of Human Services (DHS) received a child abuse hotline report, indicating inadequate supervision and environmental neglect of J.P. Jason Smith, a DHS investigator, went to the residence accompanied by the police. Based on Smith's observations of Billy Don exiting a trailer located next to the family's residence that emanated a strong odor, along with the presence of residue around Billy Don's mouth, Billy Don's admission to "huffing," Billy Don's belligerent speech, a report from Billy Don's sister, Karen Dutton, that an aunt, Bernice Bishop, left the child in Dutton's care because Billy Don was "huffing," and the environmental conditions of the family residence (no electricity or running water), DHS exercised a seventy-two hour hold on J.P.

On October 14, 2002, an emergency order was entered, which placed J.P. in DHS custody. On October 21, 2002, the trial court held a probable-cause hearing. The trial court found that J.P. was dependent-neglected, and that an emergency situation required his removal from appellants' custody. At that time, the following exchange between counsel was had:

> DHS COUNSEL: Based on the prior terminations in this matter against this family, and the circumstances at this time, I believe that it is the Department's intent to file a notice of no reunification services, as well as a petition to terminate parental rights in this matter. And we would ask that both of those, along with the adjudication, be set for one day, in an attempt to fast track this matter. And I would ask that the Department be allowed to have that at a forty-day adjudication no reunification termination, to allow sufficient time to prepare the case.

> APPELLANTS' COUNSEL: Your Honor, I have no objection to the hearing being set for forty-five days.

Subsequently, the court ordered that J.P. remain in DHS custody, pending the adjudication hearing. On November 4, 2002, DHS filed notice of its intention to terminate appellants' parental rights based upon "the parent(s) subjecting the juvenile to aggravated circumstances and the prior involuntary termination of the parental rights of Tina Marie and Billy Don Phillips as to siblings of the above-named child."[1]

At the adjudication hearing on December 3, 2002, the trial court noted that the case was set for adjudication, that DHS intended to fast track the case, that DHS filed its notice of intent to seek a no-reunification-services finding, and that DHS had filed a termination petition. Thereafter, counsel for DHS stated as follows:

> It's my understanding that, in regard to the adjudication, the parents will stipulate. In regards to the no reunification services, the parents do not intend to contest that. That we would ask that the Court determine the permanency planning to be termination, and adoption at this point. And then the parents will not contest the termination of parental rights petition.

Counsel for the appellants replied:

> I represent the parents, Billy and Tina Phillips. I have explained to my clients their options, and their right to have a hearing for the dependency/neglect, and the no reunification, as well as the termination. It is their desire, at this point, not to contest that. They do stipulate to dependency/neglect, based on incarceration and the prior termination, and they believe it is in the best interest of their child; however, they would like to ask for one last visit.

In an exchange with the court shortly thereafter, the court asked appellants' counsel if her clients were stipulating that they knew they had the right to further hearings with regard to no reunification efforts, to which she replied:

> Yes, Your Honor. I've explained that they have the right to have a hearing, to require the Department of Human Services to put on a case. I've explained their [options], and asked them what it is they

---

[1] It is undisputed that appellants had three other children for whom their parental rights had been terminated.

prefer to do. And they've indicated to me, in fact, they told me that they do not contest the no reunification, nor do they contest termination. However, as I said, they would like one last visit.

Subsequent to this exchange, the court asked appellant Billy Don if he was satisfied with the representation of his attorney. He replied, "I don't think I got no choice, do I? They got my little boy." The court told Billy Don that he did have a choice — the choice to have a hearing. The court informed Billy Don that his attorney could not decide for him and that it was his choice. Billy Don informed the court, "I want a trial." Tina Marie stated, "I'm gonna agree with my husband, and take it to trial." Appellants' attorney informed the court that she was ready to proceed.

Following the taking of evidence, the court noted DHS's extensive relationship with this family and that appellants' parental rights had been previously terminated as to other siblings. The court found that DHS had made reasonable efforts to preserve the family, including offering parenting classes, counseling, medication management, transportation services, visitation, and housing assistance. Thus, the court granted DHS's motion for no reunification services, determining that the goal was termination.

Subsequently, DHS requested that the court "fast track" the case and grant its termination petition that very day. Defense counsel objected, stating that according to Ark. Code Ann. § 9-27-338 (Supp. 2001), a permanency planning hearing must be set within thirty days of the court filing a no reunification order. DHS responded that nothing in the statute prohibited the court from holding the permanency planning hearing immediately, given that it had already provided notice of no reunification and the petition to terminate. During its adjudication hearing, the court determined that jurisdiction continued and held a permanency planning hearing immediately thereafter. Subsequently, the court terminated appellants' parental rights and this appeal followed. Appellants claim that the trial court erred when it "fast tracked" the case. We disagree.

Arkansas Code Annotated section 9-27-341[2] provides that the court may only consider a termination petition if there "is an appropriate permanency placement plan[.]" Section 9-27-341

---

[2] This code section was subsequently amended to address the very issue that is subject to this appeal — whether a permanency planning hearing be held as a prerequisite to the filing

must be read in harmony with Ark. Code Ann. § 9-27-338, which mandates a permanency planning hearing, providing in pertinent part that the court "shall hold a permanency planning hearing in order to enter a new disposition in the case" "no later than twelve (12) months after the date the juvenile enters an out-of-home placement,". . . . "*or* no later than thirty (30) days after the court files an order that no reunification services shall be made to reunite the juvenile with his family[.]" *See* Ark. Code Ann. § 9-27-341(a)(1) (Supp. 2001). (Emphasis added.)

The basic rule of statutory construction is to give effect to the intent of the General Assembly; in determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Turnbough v. Mammoth Spring School Dist. No. 2*, 349 Ark. 341, 78 S.W.3d 89 (2002). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction; however, the appellate court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Id.* We will not interpret a statute in a manner that is contrary to the clear language of the statute; nor will we read into a statute language that is not there. *See id.* We will not interpret a statute so as to reach an absurd conclusion. *Mings v. State*, 316 Ark. 650, 873 S.W.2d 559 (1994).

Appellants interpret Ark. Code Ann. § 9-27-338 to mean that the court could hold a permanency planning hearing only after it files a no-reunification order. Appellants' interpretation is misplaced for two reasons. First, under section 9-27-338, the court is required to hold a permanency planning hearing "no later than twelve (12) months after the date the juvenile enters an

---

of a petition to terminate parental rights, or as a prerequisite to the court's considering a petition to terminate parental rights. The amended statute now provides that:

> (B) This section does not require that a permanency planning hearing be held as a prerequisite to the filing of a petition to terminate parental rights, or as a prerequisite to the court's considering a petition to terminate parental rights.

Ark. Code Ann. § 9-27-341(b)(1)(B) (Supp. 2003). Nevertheless, we must apply the statutes applicable when this appeal was brought.

out-of-home placement, . . . *or* no later than thirty (30) days after the court files [a no- reunification order.]" (Emphasis added.) This "or" disjunctive located in the language of the statute does not provide the court with merely one option as to when it can hold a permanency planning hearing. Instead, the "no later than twelve (12) months after the date the juvenile enters an out-of-home placement," portion of the statute could potentially provide the court the avenue to hold the hearing even before it has filed the no-reunification order. Second, the "no later than thirty (30) days after the court files [a no-reunification order]" section of this statute only sets an outer parameter for when the court should hold the hearing. Thus, the language in the statute of "no later than twelve (12) months after" and of "no later than thirty (30) days after" merely provide outside parameters for the court and does not hinder its ability to act prior to those parameters.

■ Although Ark. Code Ann. § 9-27-341 has been amended several times over, its stated purpose has remained unchanged — "to provide permanency in a juvenile's life in all instances where the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare[.]" In this instance, appellants had previously had their rights involuntarily terminated as to three other children. Under Arkansas Code Annotated section 9-27-341, such a fact is an immediate ground for termination. Nevertheless, the trial court held an adjudication hearing at which it determined that no reunification services would be provided, and immediately thereafter, conducted the permanency planning hearing. Although the court had not filed the reunification order, it had announced its intention from the bench to provide no reunification services, and under our interpretation of the statute, there was no error in doing so. Accordingly, we affirm.

Affirmed.

STROUD, C.J., and ROBBINS, VAUGHT, ROAF, JJ., agree.

HART, BIRD, GRIFFEN, CRABTREE, JJ., dissent.

JAY T. FINCH, Judge, dissenting. I agree with appellants that the trial judge erred when he acquiesced in the "fast track" exercise proposed by the Department of Human Services ("DHS") and assented to by the attorney ad litem in this termination of parental rights case. Rather than turn a blind eye to what I deem a callous,

calculated, and wholly unjustified stratagem by DHS to avoid the duties imposed on it under state law, I would reverse the trial court's decision to terminate parental rights and remand this case so that (a) the DHS would develop and present the permanency planning report required by state law after a trial court enters an order of no reunification of services for a dependent/neglected juvenile, (b) so that the trial court would hold a permanency planning hearing based on the permanency planning report, and (c) so that the decision to terminate appellant's parental rights regarding Jamie Dale Phillips (born March 2, 2002) would be made after careful and deliberate efforts in compliance with Arkansas law rather than result from a mysterious DHS scheme to evade its duties under the law for which DHS has provided no factual explanation or legal justification.

Arkansas Code Annotated section 9-27-338(a)(1) (Supp. 2001), as it existed when this case was pending in the trial court, plainly required that the trial court hold *a permanency planning hearing* in order to enter a new disposition "no later than thirty (30) days after the court files an order that no reunification of services shall be made to reunite the juvenile with his or her family." With the same clarity, Section 3 of that statute provides that the DHS "*shall develop a permanency planning report, to be presented at the permanency planning hearing,* outlining the department's recommendations for a permanency plan for the child and the steps necessary to finalize the permanency plan in a timely manner." (Emphasis added.) Section 4 of that statute provides that the trial court shall enter, at the permanency planning hearing, one of several specified permanency goals, listed in order of preference, in accordance with the best interest of the juvenile. The entire thrust of the statute dictates the conclusion that the Arkansas General Assembly intended that DHS would provide a permanency planning report upon which the trial court would proceed carefully, deliberately, and for the purpose of filing an order within 30 days, regarding the disposition of a child who has been found dependent/neglected when the trial court finds that no reunification services shall be made to reunite the juvenile with his or her family.

Nothing close to the scenario mandated by the statute and envisioned by the General Assembly occurred concerning Jamie Dale Phillips, the child whose interests were at stake in the case at hand and whose parents, appellants, have had their parental rights terminated. In the first place, the DHS failed to develop a permanency planning report. DHS filed notice on November 4, 2002, one month before the adjudication hearing scheduled for Decem-

ber 3, 2002, of its intention to recommend that a finding of no reunification of services be entered against the parents in this case. The final sentence of that notice reads: "Should such a finding [of no reunification of services] be entered by the Court, DHS will propose a permanency plan for the juvenile." The Department never developed or presented the permanency planning report it promised the trial court and appellants it would provide and which Arkansas law commanded it to develop.

The proceeding scheduled for December 3, 2002, was initially to have been an adjudication/no reunification of services hearing according to the express terms of the hearing notice that DHS filed. But at that hearing, counsel for DHS stated:

> This was set for an adjudication hearing today. The Department intends to fast track on this case, and filed a notice of the intent to seek a no reunification of services finding, which was filed on November 4th. Also on November 4th, the Department filed a petition for termination of parental rights. It's my understanding that, in regard to the adjudication, the parents will stipulate. In regard to the no reunification services, the parents do not intend to contest that. That we would ask that the Court determine the permanency planning to be termination, and adoption at this point. And then the parents will not contest the termination of parental rights petition.

Counsel for appellants then announced that her clients had been advised of their right "to have a hearing for the dependency/neglect, and the no reunification, as well as the termination," and that they had decided "to not contest that." However, appellants informed the trial court that they wanted a hearing for the purpose of trying to regain custody of their child, as indicated by the following exchange between the trial court and appellants:

> MR. PHILLIPS: I don't think I got no choice, do I? They got my little boy.

> THE COURT: Yes, you do have a choice. You can have a hearing. We can take testimony. All of that stuff can be done. You have to decide. Your lawyer cannot decide for you, to say yes, or no. You have to make that decision, Mr. Phillips. You have to decide for yourself that you want to agree that your child was dependent/neglected, was mistreated, or failed to

be properly cared for. You have to say yes, or no, to the Department's motion. The Department is saying that they want to have a hearing where they want to prove that they shouldn't have to offer you any services to put you back together with your child. And they also have filed a paper saying they want to terminate your parental rights to your child, because you've had your parental rights terminated in the past. And you have to say yes, or no to those allegations made by the Department. Ms. Noschese [appellants' counsel] cannot do that for you. She can tell me what you say. But she can't say for you. So you need to tell me, do you want to do this, or not?

MR. PHILLIPS: I want a trial.

THE COURT: All right. Ms. Phillips. We're here today to do three things. Number one, determine whether or not your children were dependent/neglected in your care. The other thing is, to determine whether there ought to be any efforts made by the Department of Human Services to put you back together with your child. And the third thing is, to have a trial to determine whether or not your parental rights ought to be terminated. Your attorney tells me that you've told her that that's what you want to do. You want to give up all of those hearings, and that you just want to be over with?

Ms. PHILLIPS: No, I want to try to get Jamie back.

THE COURT: All right. Do you want to stipulate to dependency/neglect: There's three parts to this. The dependency/neglect hearing. No reunification. And termination of parental rights. Right now, we're at dependency/neglect. So.

Ms. PHILLIPS: I'm gonna agree with my husband, and take it to trial.

It is obvious that DHS never intended to develop a permanency planning report. It offered no such·report into evidence at the December 3, 2002, hearing or at any other time. Rather, the record merely contains a bald assertion by counsel for DHS that "we would ask that the Court determine the permanency planning to be termination, and adoption at this point." To the extent that the decision today contemplates that a permanency planning

hearing took place, that contemplation assumes a hearing based on a report that was required by state law but never produced by DHS, let alone considered by the trial court.

At the close of the evidence, the trial court entered verbal findings that Jamie Dale Phillips was dependent/neglected, and ordered "that the Department of Human Services is no longer required to provide further services toward reunification in this case. And the goal of this case will become termination of parental rights. I need a termination of parental rights hearing date." The following exchange then occurred:

> MULLINS (DHS Counsel): Your Honor, this is the first one that I've done in this manner. Since the Court has changed the goal to termination, the Department has filed a petition to terminate parental rights. And given that the standards are the same for the no reunification, and the termination of parental rights, I would ask that the Court grant the Department's petition to terminate *today*. (Emphasis added.)

> NOSCHESE (Counsel for Appellants): Your Honor, if I remember how the Statute reads, after a no reunification finding, that this court is to set a permanency planning hearing within thirty days. I believe that we have to have an actual permanency planning hearing before there could be a termination. And so I would ask that the case be set for a permanency planning, and then termination.

> MULLINS (DHS Counsel): Your Honor, I believe the Statute says that the permanency planning must be held within thirty days. There's nothing that prohibits the Court from holding it immediately, and changing the goal to termination and adoption, and then granting the termination petition. The Department has provided notice of no reunification, along with the petition to terminate parental rights in this matter. So the parents are aware of this possibility. And I don't think that the Statute prohibits the Court from having an immediate permanency planning hearing, and then entering the termination order.

> CASTLEMAN (Attorney ad litem): We would concur with the Department that the Statute states that, since the notice was given for no reunification, that termination may occur at this time.

THE COURT (Judge Finch): Direct me to the language in the Statute that you're relying on. You first, Ms. Noschese. I mean, Ms. Mullins.

MULLINS (DHS Counsel): Your Honor, under Section 9-27-329, which is a disposition hearing, if the Court determines that reunification services shall not be provided, the Court shall hold a permanency planning hearing within thirty days after the determination. The Department, the attorney ad litem, or the Court can make a no reunification services recommendation, and provide notice to the parties of the recommendation at any time. And we have done that. And I believe that since it does state that, within thirty (30) days after the determination, that that does not prohibit the Court from immediately holding the permanency planning hearing today.

. . .

THE COURT: I don't know that that answers the full question, though. Because if I treat today's hearing as a permanency planning hearing, and I set the goal to be TPR [termination of parental rights], does that mean we can also hold a TPR today?

MULLINS: I don't think the Statutes prevent that. And the basis for the termination of parental rights would be the same information that has been previously presented to the Court through the adjudication of no reunification services. And I believe as has already been established, those hearings can be incorporated into the termination of parental rights hearing. And therefore, the Court can consider those when making the determination.

. . .

NOSCHESE: ... Under the Statute under permanency planning hearing, Section 9-27-338, it states in there that no later than, then it talks about the twelve months. Of course, we're not there at this point. But it also states or no later than thirty days after the court files an order that no reunification services shall be made to reunite the juvenile with his or her family, the court shall hold a permanency planning hearing in order

to enter a new disposition in the case. I would argue that that Statute is stating that the order of no reunification has to be filed, and then you can have the permanency planning hearing within thirty days, upon the time of filing.

MULLINS: I would just point out that under that Section 9-27-338, it says no later than twelve months, or no later than thirty days. At this point, it is no later than twelve months, so I think it's an either or situation. And you can still have it today.

CASTLEMAN (Attorney ad litem): I believe as long as notice was given of the no reunification, and notice was given of the termination, I believe that is perfectly within the law to go ahead and terminate.

THE COURT: That's my understanding of the law as well. My understanding. Under ASFA, the limitations on the time are set as to outer limits, not the inner limits time. That the shorter time limits are those that are imposed for purposes of notice and an opportunity to be heard. I believe that, in this case, the notice has been provided to these parents; an opportunity to be heard has been provided to these parents. They have been represented by counsel all during that time. The petitions for termination, as well as the motion for no reunification, and the notice that would have such a hearing, have been timely filed. And the testimony has been heard today. So with regard to the objection that I cannot, at this point, move to TPR—I'm going to find that the requirement of the Statutes with regard to the appropriate notice prior to termination of parental rights has been given. I find that the testimony, as well as the evidence that has been previously provided to this court, is sufficient evidence, both for the finding previously entered that there should be no further efforts at reunification. I'm going to enter an order terminating these parent's (sic) parental rights to the child in this case: Jamie Dale Phillips. I'll find that it is in Jamie Dale Phillips' best interest that his parental rights be terminated, and that he be freed up for adoption as quickly as possible.

The adjudication order and order of no reunification of services from the December 3, 2002, hearing in this case were filed February 6, 2003, at 1:37 p.m. Paragraph 3 of that Order declares that the "Court

finds that the Department is seeking a finding of no reunification services on the bases that the juvenile is dependent-neglected...." Paragraph 4 of that order reads: "Based upon proper notice to the parties, the Court proceeds today to adjudicate the petition for Dependency/Neglect in the above-titled matter, as well as . . . to adjudicate the Department's Motion seeking a finding of no reunification services." Paragraph 15 of the order reads:

> Jurisdiction of this cause is continued with a permanency planning hearing to be held immediately, pursuant with A.C.A. § 9-27-338. The Court notes that the time frames required by A.C.A. § 9-27-338, are outer limits and do not prevent the Court from conducting an immediate permanency planning hearing. Further, all parties have received sufficient notice of such a hearing being held on this date and therefore, no further notice shall be required.

The permanency planning order in this case was filed at 1:36 p.m. on February 6, 2003, a minute *before* the adjudication and no reunification services order was filed. Paragraph 2 of that order states, in pertinent part, as follows: "The Court proceeds today under Ark. Code Ann. § 9-27-338 to determine a permanent plan for the juvenile." Paragraph 3 of the permanency planning order states: "The Court, mindful of the available permanency planning dispositions, does hereby determine that it is in the best interest of the juvenile that the goal of the case shall be that parental rights will be terminated and the goal will be adoption." Paragraph 7 of the permanency planning order declares, in part, that

> Jurisdiction of this cause is continued with a termination of parental rights hearing to be held immediately, . . . The Court notes that the Department filed its Petition to Terminate Parental Rights on November, 4, 2002 and therefore, the Petition was timely filed and the parties were properly noticed. Further, all parties present received sufficient notice of such a hearing being held on this date and therefore, the Court is not prohibited from conducting an immediate termination of parental rights hearing.

The order does not assert that the trial court considered a permanency planning report from DHS, nor does it indicate that DHS submitted such a report. No permanency planning report is otherwise in the record before us.

The order from which this appeal is taken is titled, "ORDER TERMINATING PARENTAL RIGHTS AND GRANTING TO THE ARKANSAS DEPARTMENT OF HUMAN

SERVICES THE POWER TO CONSENT TO ADOPTION." That order was filed at 1:35 p.m. on February 6, 2003, one minute *before* the permanency planning order and two minutes *before* the adjudication and no reunification of services order. Thus, the record shows that the permanency planning order was filed before the no reunification of services order was even filed and *that the termination of parental rights order was filed even before the order which adjudicated Jamie Dale Phillips dependent/neglected was filed.*

My dissenting position is based on more than the fact that the orders in this case were filed in odd sequence. The permanency planning report and hearing required by Ark. Code Ann. § 9-27-338 is required so that a trial court which has found that no reunification services shall be made to reunite a juvenile who has been adjudged dependent/neglected will have a studied analysis from DHS of what the statute calls "the department's recommendations for a permanency plan for the child and the steps necessary to finalize the permanency plan in a timely manner." Ark. Code Ann. § 9-27-338(a)(3) (Supp. 2001). The General Assembly clearly intended that DHS would "develop a permanency planning report." Otherwise, it would not have used the mandatory word "shall" in subsection 3. It is just as clear that the General Assembly intended for the permanency planning report "to be presented at the permanency planning hearing." Nowhere does the statute intimate, let alone state, that trial courts are authorized to terminate parental rights in cases where DHS fails to prepare the permanency planning report and decides, for unstated reasons, to "fast track" the adjudication, non-reunification of services, permanency planning, and termination of parental rights decisions by conflating those four major determinations into a single proceeding.

I realize that the statute provides that the permanency planning hearing must be held no later than 30 days after the trial court files a no reunification of services order. However, that time stipulation does not relieve DHS from the statutory obligation to develop and present a permanency planning report that can be reviewed by the trial court and examined by parents faced with a petition to terminate their parental rights to children who have been adjudicated dependent/neglected. Even after a circuit court has filed an order that no reunification of services be made for such a child, the child's parents deserve the right to receive and examine the permanency planning report mandated by the enacted will of the Arkansas General Assembly. By specifying that the perma-

nency planning hearing be held within thirty days from entry of the no reunification of services order, the General Assembly indicated that the best interest of children from troubled or impoverished homes and parents is not hindered if trial courts take up to thirty days to receive the permanency planning report and conduct a permanency planning hearing. That does not mean, however, that the General Assembly contemplated that trial courts would make essentially simultaneous rulings of dependency/neglect, no reunification of services, permanency planning, and termination of parental rights without even obtaining the permanency planning report required by statute upon which the statutorily mandated permanency planning hearing must be based.

Finally, I refuse to ignore that the Department of Human Services has never disclosed, either to the trial court or by its arguments on appeal, what made it necessary to "fast track" this case. According to the previously quoted remark by its counsel at trial, this was the first time that DHS has employed the "fast track" scheme whereby it sought simultaneous determinations of dependency/neglect, no reunification of services, permanency planning (without the statutorily required permanency planning report), and termination of parental rights. It seems only fair to ponder why the administrative agency responsible for providing a report intended to assist the trial judge in rendering a decision regarding the fate of a child who has been adjudged dependent/neglected would not favor the trial judge with that report. What could possibly make it onerous to take as much as thirty days, *or at least a day*, to present a permanency planning report that would have a bearing on the rest of the child's life? Why the rush to terminate parental rights without a separate permanency planning hearing based on the required report? Why is DHS unwilling to take the time to comply with Arkansas law in this most far-reaching issue?

Although one may speculate about the reasons, such speculation is by no means comforting especially given the repercussions of an order to terminate parental rights. Perhaps the Department of Human Services had already arranged for Jamie Dale Phillips to be adopted even before the December 3, 2002, hearing was held to determine if he was dependent/neglected. Perhaps DHS did not submit a permanency planning report because there was never a plan for anything other than to terminate parental rights so that the adoption could proceed. Perhaps DHS personnel counted on a

judicial rubber stamp of its "fast track" scheme in this case to set the stage for employing the same tactic in future cases, thereby making our decision even more disquieting.

I do not know that any of these possibilities are true. I also do not know that any of them are untrue. However, I state them because it is more than a little disturbing to me that DHS has not told the judges responsible for deciding this case why it is so important to skirt the requirements of a law aimed at giving courts information before a permanent disposition is made regarding a child from a troubled home. Aside from my firm conviction that what DHS did in this case amounted to a flagrant denial of the right appellants had to receive a fair hearing regarding permanency planning based on information the agency was mandated by statute to provide, I cannot overlook the fact that no court has ever received an explanation for the "fast track" scheme. Perhaps we have received no explanation because no good one exists. Perhaps DHS believes, to paraphrase a line from the colonel in the popular motion picture *A Few Good Men*, that judges "can't handle the truth." Perhaps the truth is that bad; perhaps it is not bad at all. The present state of affairs certainly does not look good. To put it colloquially, what DHS did in this case does not pass the "smell test."

For my part, I am unwilling to accept the idea that a bureaucratic scheme which blatantly and inexplicably disregards making a report required by statute concerning a child who has been adjudged dependent/neglected is something to be treated casually or be viewed innocently. When the General Assembly requires the DHS to develop and present a permanency planning report but DHS fails to do so and refuses to explain why its nonperformance of that statutory duty is so important, I conclude that terminating parental rights is wrong no matter what it may be that DHS does not want the rest of us to know. Noncompliance with the statute alone is reason to reverse the trial court judgment to terminate parental rights in this case. That such noncompliance occurred with so much mystery should only heighten judicial scrutiny, not deaden it.

I respectfully dissent. Judges HART, BIRD, and CRABTREE join this opinion.