MAMO TRANSPORTATION, INC. *v.* DIRECTOR, DEPARTMENT of WORKFORCE SERVICES

E 06-331                                                    270 S.W.3d 379

Court of Appeals of Arkansas

Opinion delivered December 19, 2007

[Rehearing denied January 23, 2008.]

*Thomas B. Staley*, for appellant.

*Allan Franklin Pruitt*, for appellee.

D AVID M. GLOVER, Judge. Appellant, Mamo Transportation, Inc., appeals the Board of Review's decision that it is required to pay unemployment taxes on the drivers it engages because it failed to meet the three-prong test set forth in Arkansas Code Annotated section 11-10-210(e) to determine if its drivers are independent contractors. The Board of Review found that Mamo met the first prong but did not meet the second prong, and because of that it was unnecessary to address the third prong. On appeal, Mamo argues that it met the criteria of the second prong. We affirm the Board of Review's determination that Mamo did not meet the second prong and is therefore liable for payment of unemployment taxes.

Arkansas Code Annotated section 11-10-210(e) (Supp. 2005) provides:

> (e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:

> (1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact; and

> (2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

> (3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

### Overview

Mamo provides "drive-away" services for its customers throughout all forty-eight contiguous states and into Canada. Mamo contracts with drivers to deliver large vehicles to its

customers, *i.e.*, tractor-trailers, buses, and motor homes, where conventional hauling is not financially efficient. Mamo, which is headquartered in Indiana and has dispatch offices in Indiana, Pennsylvania, North Carolina, and Arkansas, has a list of approved drivers. An approved driver calls one of the dispatch offices when he wants to work to determine if there is a trip he wants to take. Mamo gives the driver the amount it is willing to pay per mile for the trip, and the driver is free to attempt to negotiate a better deal. If the driver and Mamo are able to agree on a price, the driver makes the trip. Mamo's profits are derived from the difference between what the customer pays Mamo and what Mamo pays the driver. Mamo does not have exclusive contracts with any driver; testimony indicated that eighty-eight percent of the drivers had at least two other carrier contracts in addition to Mamo. There was testimony that Mamo does not train its drivers; that the drivers are responsible for paying their own taxes; that the drivers pay their own expenses, including meals, lodging, fuel for the vehicle being delivered, and transportation home after delivery; that drivers choose how much to work; and that drivers are responsible for the first $1000 in damages if there is an accident, with Mamo's liability insurance paying the balance owed. Three Mamo drivers testified that they considered themselves to be independent contractors.

### Case History

This case arose when one of Mamo's drivers, Sylvia Jones-Allen, filed for unemployment benefits after Mamo cancelled her contract on the basis that she was a high-risk driver. Jones-Allen was making her third trip for Mamo during her first ninety days under contract when she caused over $9,000 in damages to a vehicle by driving it under a bridge that was too low for the vehicle. When she applied for unemployment benefits, Jones-Allen identified herself as an independent contractor. Mamo agreed with this designation. However, the Board of Review found that Mamo was not exempt from paying Arkansas unemployment taxes because it did not meet all three prongs of Arkansas Code Annotated section 11-10-210(e). Mamo now brings this appeal.

### Discussion

In *American Transportation Corporation v. Director*, 39 Ark. App. 104, 106, 840 S.W.2d 198, 199 (1992) (citations omitted), our court held:

In order to obtain the exemption contained in the Act, it is necessary that the employer show to the satisfaction of the Director that the requirements of all three subsections have been met. Therefore, if there is sufficient evidence to support a finding that any one of the three requirements were not met, the case must be affirmed. In reviewing decisions of the Board of Review, this court views the evidence in the light most favorable to the Board's findings, giving them the benefit of every legitimate inference that can be drawn from the testimony, and will affirm the determination of the Board if its findings are supported by substantial evidence. The issue to determine is not whether the evidence would support some different finding, but whether it supports the finding actually reached by the Board.

In the present case, Mamo does not make the argument that its drivers are not paid wages; therefore, the only issue on appeal is whether Mamo meets the second prong of section 11-10-210(e), whether the service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed. This second prong itself is a two-part alternative test — the test is met if the service is performed either outside the usual course of business *or* if the service is performed outside of all the places of business of the enterprise for which the service is performed.

In *Home Care Professionals of Arkansas, Inc. v. Williams*, 95 Ark. App. 194, 235 S.W.3d 536 (2006), this court held that the appellant, HCP, was not exempt from paying unemployment taxes because it had failed to satisfy subparagraph two of the statutory exemption. HCP maintained a list of caregivers who provided home-care services for the elderly; when it first began, HCP provided direct home-care services for the elderly, but it had eventually evolved into a home-care referral service. Clients contacted HCP and stated what home-care services were needed; HCP collected a fee for the service up front and then found a caregiver willing to perform the necessary services. The client and caregiver negotiated a schedule and the terms of employment; once the caregiver completed the services and turned in a time sheet, HCP distributed the funds collected from the client less its forty percent referral fee. Caregivers on HCP's referral list signed independent-contractor agreements with HCP, and caregivers were responsible for their own transportation and supplies. After a schedule was arranged between the client and the caregiver, HCP

administered the schedule, including scheduling replacements if the caregiver was unable to work. HCP's caregivers were not required to be exclusively listed with HCP.

This court, in affirming the Board's decision that HCP had failed to meet the second prong of the independent-contractor test, quoted the Board's analysis of the second prong of that test:

> In the instant case, caring for the elderly is necessary to [HCP's] business, and thus providing in-home services is within [HCP's] usual course of business. Since the evidence does not establish that [HCP] receives a monetary benefit when a simple referral is made, but only when a service by a caregiver is performed for a client, a finding that providing in-home services is within [HCP's] usual course of business is particularly appropriate.
>
> In regard to the place of business aspect of the second part of the test, an employer's place of business has been found to include not only the location of a business's office, but also the entire area in which a business conducts business. *See Missouri Association of Realtors v. Division of Employment Security*, 761 S.W.2d 660 (Mo. App. 1988); *Employment Security Commission of Wyoming v. Laramie Cabs, Inc.*, 700 P.2d 399 (Wyo. 1985); and *Vermont Institute of Community Involvement, Inc., v. Department of Employment Security*, 436 A.2d 765 (Vt. 1981). More specifically, the representation of an entity's interest by an individual of a premises renders the premises a place of the employer's business. *See Carpetland*, [*Carpetland U.S.A. v. Illinois Dep't of Employment Security*, 206 Ill. 351, 776 N.E.2d 166 (Ill. 2002)]. In the instant case, the caregivers represent [HCP's] interest on the client's premises, not just in a tangential fashion, (*e.g.*, satisfactory work by the caregiver may result in future referral), but in the most direct sense, that of performing the very service by which [HCP] profits.

95 Ark. App. at 198-99, 235 S.W.3d at 540-41. The Board determined that the caregivers represented HCP's interest on the clients' premises, thereby making the clients' premises a place of business. This court adopted that determination.

Other jurisdictions have reached the same conclusion. In *O'Hare-Midway Limousine Service, Inc. v. Baker*, 596 N.E. 2d 795 (1992), the Appellate Court of Illinois rejected O'Hare-Midway's argument that the limousine drivers performed their work outside its usual course of business. The appellate court held that while the

driving did not take place at the office, the usual course of a limousine dispatching service was not limited to office space and because the drivers represented the interests of O'Hare-Midway whenever they picked up passengers, *the usual course of business was on the roadways traveled.* (Emphasis added.) Likewise, in *Employment Security Commission of Wyoming v. Laramie Cabs, Inc.,* 700 P.2d 399 (1985), cited in *Home Care Professionals, supra,* the Supreme Court of Wyoming held that the essence of the taxi cab business was conducted in cabs between the customer's origin and destination, not in the company office, and the supreme court concluded that the vehicles that provided the service had to be considered a place of business of the taxicab company. The Supreme Court of North Dakota determined in *Midwest Property Recovery, Inc. v. Job Service of North Dakota,* 475 N.W.2d 918 (1991), that "the places of enterprise" of Midwest, who was in the business of repossessing vehicles, necessarily extended to where the repossessions took place.

In the present case giving the statutory language its plain meaning and viewing the evidence in the light most favorable to the Board's findings, we hold that the Board's decision is supported by substantial evidence. Mamo provides drivers to transport vehicles for its customers. As in *Home Care Professionals, supra,* Mamo does not receive a monetary benefit until the service, here, driving and delivering the vehicle, is performed; therefore, such delivery is in the usual course of business. Regarding the "place of business" aspect of the test, by comparison to *O'Hare-Midway Limousine, supra,* and *Laramie Cabs, supra,* the roadways are where services are performed, and the drivers represent Mamo's interests on those roadways.

Affirmed.

PITTMAN, C.J., GRIFFEN, and MARSHALL, JJ., agree.

HART and MILLER, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. I agree with Judge Miller that this case must be reversed. However, I write separately to draw attention to an unsettling trend in this area of the law that I believe will have far-reaching consequences that apparently have not been considered by the majority. I submit that ratifying the Board of Review's construction of the facts of this case has all but completely annulled the status of independent contractor in this state.

At issue in this case is only the second prong of the three-part test set forth in Arkansas Code Annotated section 11-10-210(e), whether the service performed is "outside the usual course of business" or "outside of all the places of business of the enterprise for which the service is performed." The Board of Review has erred in its findings on both of these factors.

First it errs when it finds that "the course of business for both Mamo and the drivers is providing the delivery of vehicles." This conclusion can only rest on an absurdly broad view that completely misses essential distinctions. It is rather like saying that the Earth is exactly the same as Saturn because they are both planets. It is obvious to me that while both Mamo and the drivers have a role in moving large vehicles, Mamo's sole business is matching the owners of large vehicles that need to be moved with drivers capable of moving them. There was not a shred of evidence that Mamo actually moved the vehicles itself. Likewise, the drivers actually moved the vehicles, but, at least in the context of their relationship with Mamo,[1] had no role in the matching of their skills to the needs of the owners of the vehicles. These distinctions are pivotal. To ignore them is tantamount to saying that a theatrical agent is in the business of performing on stage, when his only role was to get his client the part.

The Board of Review also erred in finding that "Mamo's places of business consist not only of its office, but the roadways on which the drivers transport the vehicles." This finding is remarkable in that the testimony indicated that Mamo performed its role only in its offices, which the drivers did not visit. This finding rests not upon inductive reasoning based upon an examination of the business, but rather on the Board's circular logic that necessarily originated from its flawed conclusion that the drivers were employees, i.e., that if the drivers were employees, then the place of business was everywhere they transported vehicles. The Board tries to support this dubious conclusion by stating that because Mamo "profits" from the drivers' efforts, the transport of the vehicles "constitutes the essence of Mamo's services to its customers." Again, that conclusion is not a product of logic. The theatrical agent earns his money from the actor's performance, but it does not make the agent an actor.

---

[1] There is, however, testimony that the drivers were free to make their own arrangements with the owners of large vehicles for subsequent transports. Essentially, the drivers were free to cut out the middleman for subsequent trips.

The majority's reliance on *Home Care Professionals of Arkansas, Inc. v. Williams*, 95 Ark. App. 194, 235 S.W.3d 536 (2006), hereinafter "HCP," to affirm the Board's "source of profit" rationale is also troubling. In the first place, I believe that HCP was wrongly decided and I would take this opportunity to overrule it. However, while I can accept the consequences of *stare decisis*, I cannot accept the *extension* of the flawed HCP holding that this court has announced today in the instant case. HCP is clearly distinguishable from the case at bar. As the majority notes, HCP originally provided direct home-care services and only later "evolved" into a referral service. The HCP court found it significant that HCP's Articles of Incorporation declared that its "purpose is to provide home-care for the elderly." I suppose the State of Arkansas has the right to rely on the official declarations that a business makes to the secretary of state. In the instant case, there is no equivalent declaration of corporate purpose. Additionally, HCP required its independent contractors to sign noncompetition covenants that "protects" its customer list. Mamo imposed no such restriction on the drivers.

The prudent course would be to limit HCP to situations where an entity has held itself out as providing a particular service and restricting access to clients. Instead the majority has written an opinion that is as potentially far-reaching as it is ill-advised. I have already discussed how actors may now potentially be viewed as the employees of their agents. Arguably, this reasoning would apply to all employment agencies as well. However, I believe the reach of this opinion is far greater. There are hundreds of poultry farmers in this state that raise chickens under contract with Tyson Foods. Are they now "employees" of Tyson? Could the rice farmers in this state suddenly be declared "employees" of Riceland? I suspect that the court of appeals has unwittingly opened a Pandora's Box.

I believe that this case should be reversed and remanded to the Board of Review.

B RIAN S. MILLER, Judge, dissenting.

### I. Introduction

This case requires us to determine the meaning of the phrase "places of business," which is found in Arkansas Code Annotated section 11-10-210, the statute defining "employment," when determining which work relationships are subject to unemployment taxation. The majority's determination that Mamo's places

of business include every alley, roadway, highway, and freeway in the United States and Canada is too broad, leading to an unreasonable result that is unsupported by the plain language of the statute.

There is no doubt that Arkansas Code Annotated section 11-10-210 is a very broad statute that requires almost every entity utilizing independent contractors in the State of Arkansas to pay unemployment taxes for those contractors. To reach this result, the statute broadly defines employment as almost any service provided, "irrespective of whether the common law relationship of master and servant exists." Ark. Code Ann. § 11-10-210(e).[1] The statute, however, exempts a small number of work relationships from the definition of "employment," and that is the issue presented by this case.

## II. Background

Appellant Mamo Transportation, Inc. contracts with its customers to deliver large vehicles where conventional hauling is not financially efficient. It then contracts with drivers to deliver the large vehicles for its customers. Sylvia Jones-Allen contracted with Mamo to deliver vehicles for Mamo's customers. Mamo was not required to assign deliveries to Jones-Allen and she was not required to accept deliveries from Mamo. Jones-Allen was under contract for approximately three months, during which time she made only three deliveries. She had an accident on her third delivery and Mamo decided not to assign any future deliveries to her. Jones-Allen then filed a claim for unemployment benefits.

It is undisputed that Jones-Allen was a common-law independent contractor and was not Mamo's employee. Jones-Allen wrote that she was an independent contractor on her application for unemployment benefits. She was free to decide when and if she would deliver vehicles for Mamo's customers and Mamo was free to decide when and if it would use her to deliver vehicles for its customers. She was free to contract with whomever she wanted, whenever she wanted, including Mamo's competitors. Mamo was

---

[1] Citizens, however, remain free to independently contract for their labor and the courts recognize independent contractor relationships when, among other things, determining liability for contract and tort disputes. *See, e.g., Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 217 S.W.3d 797 (2005) (breach of contract); *Draper v. Conagra Foods, Inc.*, 92 Ark. App. 220, 212 S.W.3d 61 (2005) (tort).

free to contract with other independent contractors whenever it wanted and was not required to ever assign a delivery to Jones-Allen. Mamo did not train her or provide her with the tools of her trade. She paid her own taxes and paid her own expenses, including lodging, meals and fuel. Mamo did not direct her as to how to deliver the vehicles and she was free to deliver the vehicles in any manner she chose.

While all of this is true, Arkansas' unemployment compensation act is not limited by the common law definition of employment. As pointed out by the majority, Arkansas Code Annotated section 11-10-210(e) provides:

> (e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:
>
> > (1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact; and
> >
> > (2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and
> >
> > (3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

Mamo does not dispute that Jones-Allen received wages, a term which is defined broadly as "all remuneration paid for personal services. . . ." Ark. Code Ann. § 11-10-215 (Supp. 2007). Mamo, therefore, had to satisfy this three-prong test to be exempted from paying unemployment taxes for Jones-Allen. The Arkansas Department of Workforce Service determined that Mamo met the first prong of the test as provided in section 11-10-210(e)(1). The Department, however, found that Mamo failed to satisfy the second prong, which required Mamo to show that the service provided by Jones-Allen was "performed outside of all the places of business of the enterprise for which the service is performed," as required by section 11-10-210(e)(2). Because Mamo was required to satisfy all three

prongs of the test, the Department did not address the third prong, which is found in section 11-10-210(e)(3).

The majority, citing *Home Care Professionals of Arkansas, Inc. v. Williams*, 95 Ark. App. 194, 235 S.W.3d 536 (2006), and a number of cases from other states, found the Department's logic sound and affirms. I disagree and would reverse.

### III. Mamo Transportation, Inc. was not Sylvia Jones-Allen's Employer

#### A. The Enterprise For Which Service is Performed

The essential question is, did Jones-Allen perform all of her service "outside of all of the places of business of the enterprise for which the service is performed?" *See* Ark. Code Ann. § 11-10-210(e)(2). Although it was not addressed by the Board, we must begin by determining what was the "enterprise for which the service [was] performed" by Jones-Allen? *See id.* Was Mamo the enterprise for which Jones-Allen performed service or was each of Mamo's customers the enterprise? The record is clear that Mamo contracted to deliver the vehicles for its customers and then contracted with its subcontractors to make the deliveries. Mamo was not a transportation broker but was a licensed carrier, and its obligations to its customers were "farmed out" to its drivers. *See Transplace Stuttgart, Inc. v. Carter*, 98 Ark. App. 418, 255 S.W.3d 878 (2007). Because Mamo was ultimately responsible to its customers for the service provided by Jones-Allen, Mamo was the enterprise to which Jones-Allen provided service. Had Mamo been a transportation broker, Jones-Allen's claim for benefits would have been a non-starter because the enterprise to which she provided service would have been the customer, not Mamo.

#### B. Mamo's Places of Business

Although Mamo was the enterprise to which Jones-Allen provided service, Mamo was exempt from paying unemployment taxes for her because she did not perform those services for Mamo at any of its places of business. *See* Ark. Code Ann. § 11-10-210(e)(2). We should not read anything into the statute but we must read the statute literally and give its words their ordinary and usually accepted meaning in common language. *Phillips v. Ark. Dep't of Human Servs.*, 85 Ark. App. 450, 158 S.W.3d 691 (2004); *Brandon v. Ark. Pub. Serv. Comm'n*, 67 Ark. App. 140, 992 S.W.2d 834 (1999). Mamo's places of business, using the usually accepted

meaning in common language, are its facilities, which are located in Osceola, Indiana; Little Rock, Arkansas; Charlotte, North Carolina; and Bloomsburg, Pennsylvania. The record is clear that Jones-Allen performed no services for Mamo at any of these facilities. Therefore, her services were performed outside of all of Mamo's places of business.

The majority's holding that Mamo's places of business include every alley, roadway, highway, and freeway in the United States and Canada does not comport with the common meaning of the language found in the statute. Had the legislature intended to cover every conceivable place in which Mamo provided services, the statute would have required Mamo to show that the service is "performed outside of all of the places in which the enterprise performs services," not "outside of all the places of business of the enterprise."

In support of its expansive reading of the statue, the majority relies on *Home Care Professionals of Arkansas, Inc. v. Williams, supra.* In *Home Care Professionals,* we held that the appellant, HCP, was not exempt from paying unemployment taxes for the in-home caregivers that it assigned to its clients. *Id.* It is arguable that *Home Care Professionals* was wrongly decided. *See id.* (Baker, J., dissenting). We, however, will save that issue for another day, because this case is clearly distinguishable from *Home Care Professionals.*

As the majority opinion points out, in *Home Care Professionals* we adopted the Board's determination that "the caregivers represented HCP's interest on the client's premises, thereby making *the clients' premises* a place of business." *Home Care Professionals, supra.* (Emphasis added.) Although we extended the phrase "places of business" to include the homes of HCP's clients, we did not extend that phrase to include every conceivable place that the caregivers traveled in an effort to serve HCP's clients. And that is the rub of the case before us; the majority's opinion takes the next step of expanding the phrase "places of business" to include a greater number of places, none of which would be considered places of business by the ordinary reasonable person.

The majority extends the phrase "places of business" beyond well defined places such as the homes and business locations of customers. It reaches out and applies it to every conceivable place in which an independent contractor could possibly provide a service for its prime contractor's customers. In the present case,

this specifically includes every alley, roadway, highway, and freeway in the United States and Canada. Although seemingly absurd, the majority's definition also includes all of the railways and waterways in, and all of the air space above the United States and Canada. This is the case because Mamo's independent contractors were not restricted in the method by which they could have the vehicles delivered. Although it may have caused financial ruin, Jones–Allen could have arranged to have the vehicles delivered by some method other than driving. Therefore, Mamo's places of business include every possible shipping route in the United States and Canada. Not only is this unreasonable, it is not what the legislature intended. Indeed, it contradicts the common meaning of the language of the statute.

There is also a secondary distinction between this case and *Home Care Professionals.* Although Jones–Allen was clearly an independent contractor, it is not clear whether the caregivers in *Home Care Professionals* were truly independent. For example, in addition to referring its caregivers to its customers, HCP also administered the care-givers' work schedules. *Id.* When a caregiver was unable to make a scheduled in-home visit, HCP was responsible for finding a replacement to meet the caregiver's obligation. *Id.* Additionally, the caregivers' contracts with HCP contained non-compete clauses, which restricted the ability of its caregivers to contract for their labor once their relationship with HCP concluded. *Id.*

The majority also relies on a number of cases from foreign jurisdictions to support its interpretation of section 11-10-210(e)(2). I will not give a detailed analysis of those cases, because I stand firm in deferring to the common meaning of the language of section 11-10-210(e)(2). Moreover, there are cases from other jurisdictions which are in direct opposition to the results reached by the foreign cases cited by the majority. *See, e.g., Commissioner of Div. of Unemployment Assistance v. Town Taxi of Cape Cod, Inc.,* 68 Mass. App. Ct. 426, 862 N.E.2d 430 (2007) (finding that the services provided by taxi drivers occurred outside of the business premises of the taxi company).

## *IV. Conclusion*

This court's interpretation of the phrase "places of business" should be constrained to the common meaning of that phrase. For this reason, Mamo's places of business are its facilities in Osceola,

Indiana; Little Rock, Arkansas; Charlotte, North Carolina; and Bloomsburg, Pennsylvania. Because Jones-Allen never provided services to Mamo at these facilities, I would reverse the decision of the Department of Workforce Services.

