Kaedon STEINERT and Hurricane Express *v.* DIRECTOR, Arkansas Employment Security Department

E 98-20                                         979 S.W.2d 908

Court of Appeals of Arkansas
Division III
Opinion delivered November 18, 1998

*Ball & Mourton, Ltd.*, by: *David G. Bercaw*, for appellants.

*Phyllis Edwards*, for appellee.

JOHN F. STROUD, JR., Judge. This is an appeal from the Board of Review's assessment of $31,339.22 for unemployment-insurance taxes based upon its decision that appellants' business constitutes employment subject to the payment of such taxes under Arkansas Code Annotated section 11-10-210(e) (Supp. 1997). Appellants challenge the Board's decision, contending that the Board erred 1) in finding that appellants' payments to drivers were a wage or remuneration for personal services, 2) in finding that drivers were under appellant's control and direction, 3) in

finding that services were performed at appellants' place of business, 4) in finding that drivers were not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed, and 5) in basing its findings on the facts of a prior case in which appellants were not a party. We affirm.

Arkansas Code Annotated section 11-10-210(e) (Supp. 1997) provides:

> (e)  Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, *unless and until it is shown to the satisfaction of the director that*:
>
> (1) Such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; *and*
>
> (2) Such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; *and*
>
> (3) Such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

(Emphasis added.)

The first sentence of section 11-10-210(e) defines employment for purposes of coverage regarding unemployment-insurance taxes. It provides in part that "[s]ervice performed by an individual for wages shall be deemed to be employment subject to this chapter. . . ." Wages is defined to mean "all remuneration paid for personal services, including, but not limited to, commissions, bonuses, cash value of all remuneration paid in any medium other than cash, the value of which shall be estimated and determined in accordance with regulations prescribed by the director, and tips received while performing services which constitute employment. . . ." Ark. Code Ann. § 11-10-215(a) (Repl. 1996). The remainder of section 11-10-210(e), *supra*, sets out the three

requirements that must be satisfied in order to qualify for an exemption from unemployment-insurance taxes.

In the first point of appeal, appellants contend that the Board erred in finding that the payments to the drivers in the instant case were a wage or remuneration for personal services because, appellants argue, the company merely acted as a clearinghouse for the distribution of payments received from third parties. We disagree.

On appeal, the findings of the Board of Review are conclusive if they are supported by substantial evidence. *Perdrix-Wang v. Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

Here, viewing the evidence in the light most favorable to the Board's findings, Steinert testified that he started Hurricane Express in 1992; that from 1992 until approximately 1995 his business leased trucks to Sioux Transportation; that sometimes Sioux would "cut a check" to the drivers and sometimes he would pay them; that his arrangement with Sioux was that Sioux paid him on a percentage basis, with some routes paying him 80% and with other routes paying him 75%; that out of that settlement he would pay the drivers; that he had a lease agreement with Sioux, the terms of which provided that the drivers were his employees, not Sioux's; that the fact that he paid the drivers was just a "formality to keep Sioux in the clear"; that in 1995 he began a lease-purchase arrangement with the drivers; that it is "very seldom" that the drivers use one of his trucks without also using one of his trailers; that the brokers pay him for the load, and out of that amount the drivers owe him 25% of the total load for the trailer, cargo/liability insurance, permits and fuel taxes, plus their truck payment; that the driver gets what is left over; and that if the drivers have maintenance done to the truck, the cost of the maintenance performed

at his terminal is also deducted from the amount the drivers receive. Steinert described some of the activities at his place of business as follows:

> Well, we do all the mileage, tax reporting, filing and paying on the trucks because, every state, I mean you have to pay mileage tax and fuel tax, and keep it all straight for the trucks and of course the drivers have to get paid. The checks come in from the loads, they come to us, and we have to disperse the money, and the drivers call in.

We find that the Board reasonably concluded that appellants paid the drivers' wages in return for services rendered and that, accordingly, appellants' business constituted "employment" that was subject to the payment of unemployment-insurance taxes, unless the statutory requirements for exemption were satisfied.

For the second point of appeal, appellants contend that the Board erred in finding that appellants did not satisfy the first of the three statutory prongs for exemption because the drivers were under appellants' direction and control. Again, we disagree.

In order to establish the exemption set forth in section 11-10-210(e), *supra*, an employer must prove each of the requirements contained in subsections (1) through (3). *Network Design Eng'g, Inc. v. Director*, 52 Ark. App. 193, 917 S.W.2d 168 (1996). If there is sufficient evidence to support the Board's finding that any one of the three requirements is not met, the case must be affirmed. *Id*. Here, the Board determined that appellants failed to satisfy all three of the statutory requirements for exemption.

In addition to the testimony outlined previously regarding the payment of wages under both the arrangement with Sioux and under the lease-purchase agreement, Steinert testified that it was rare for his drivers to drive for any other companies; that the drivers were limited in what they could transport by whatever Hurricane Express was licensed to transport; that the drivers could haul trailers other than his, but that it would not make any sense because they have to pay him 25% anyway; that even if a driver were to haul a load for free, the driver would still owe him 25% of the fair market value of the load; that he has never had a driver actually end up owning a truck because most drivers don't keep a

truck as long as it takes to pay for it; that all of the trucks have the name, Hurricane Express, on their sides because trucks cannot travel the roads without some name on the side; and that the drivers have brokers that they like to use and they keep their trucks loaded 90% of the time, and he gets them approximately 10% of their loads. Steinert explained:

> [T]he drivers call in. They want to know who to get a load from, we'll give them a number of where their best chance of getting a load would be. Um, of course, we have to qualify the drivers, they come in and we have to qualify them. We have to run all the background checks on them, all the background checks, and see if they're okay, then send them down for drug screen and qualify them. Then, also, we have a shop where we do the trailer maintenance, and if the drivers want it, they can pay for tractor maintenance.

When asked what the arrangement with the drivers was as far as pulling appellants' trailers for any loads that appellants got on the trailers, Steinert responded, "Well, that's where for the 25% they give us, they're getting the use of the trailer, they're getting the use of our authority, all our insurances, and any contacts we have that can help them get loads."

■ This constitutes substantial evidence to support the Board's finding with respect to the first statutory prong, that the drivers were not free from appellants' control and direction in connection with the performance of their services. Consequently, it is unnecessary to address the remaining two statutory requirements since each of the three prongs must be satisfied in order to qualify for the exemption.

Affirmed.

ROBBINS, C.J., and MEADS, J., agree.