HOME CARE PROFESSIONALS of ARKANSAS, INC. *v.*
Artee WILLIAMS, Director Employment Security Department

E 04–280                                     235 S.W.3d 536

Court of Appeals of Arkansas
Opinion delivered May 10, 2006

[Rehearing denied June 14, 2006.*]

*Zachary Taylor*, for appellant.

*Alan Pruitt*, for appellee.

OLLY NEAL, Judge. This is the second time that this case concerning unemployment contributions has been before us. In December 1996, appellant Home Care Professionals of Arkansas, Inc., (HCP) filed Articles of Incorporation (Articles) with the State of Arkansas indicating that the nature and purpose of its business was to "engage in the general business of home care for the elderly, and related services." Over the years, HCP ceased directly providing home-care services and evolved into a home-care referral service.

HCP currently operates as follows. HCP maintains a list of caregivers who are able to provide home-care services. A potential

---

\* BAKER, J., would grant rehearing.

client will contact HCP and state what services they desire. HCP will collect the fees for the service up front and place them in an escrow account. HCP will then find a caregiver willing to perform the service. The client and the caregiver will negotiate a schedule and the terms of the caregiver's engagement. Once the caregiver completes the service, the caregiver turns in a time-sheet, and HCP distributes the funds from the escrow account minus its forty percent referral fee.

As to the caregivers, a caregiver will approach HCP about being placed upon its referral list. Upon acceptance by HCP, the caregiver will sign an independent-contract agreement with HCP. Paragraph nine of the contract is a non-compete clause and it provides:

> The parties to this contract agree that [HCP] has a valid and legitimate interest in the protection of its customer base from appropriation. Therefore, in order to protect this interest, [the caregiver] agrees by entering into this agreement and accepting referrals by [HCP] that he or she will not accept private employment from any client of [HCP] to whom he or she provided services for a period of twelve (12) months from the last due date of referral by [HCP].

Also, at the beginning of their association with HCP, the caregiver is informed that he/she is an independent contractor and is responsible for paying his/her self-employment taxes. The caregiver is responsible for his/her own transportation and supplies. Once the caregiver and client work out a schedule, the caregiver will inform HCP of their schedule. From then on, HCP will administer the caregiver's schedule, and when the caregiver is unable to work, HCP will schedule a replacement.

The Chief of Contributions subsequently determined that, under Arkansas law, the caregivers qualified as employees. HCP disputed the Chief's findings, and the matter was certified to the Board of Review (Board). A hearing on the matter was held before a hearing officer.

At the hearing, the following testimony was received. Ed Rolle, former director of the Employment Security Department, testified that he hired HCP to assist with his mother. He said that he stipulated his requirements to HCP, and HCP found an appropriate caregiver. He did not remember screening or selecting

the caregiver himself. Mr. Rolle testified that, when he first contacted HCP, a member of HCP's management brought a caregiver out to meet him and his mother and that, during the visit, the manager surveyed the house where the services were to be provided.

Lisa Randles testified that she was on HCP's referral list. She described herself as an independent contractor. She said that HCP was not her only source of referrals. Ms. Randles explained that she takes jobs on her own and receives referrals from other sources. She testified that, when she signed on with HCP, she was given a list of the available jobs, and after choosing the jobs that she wanted, she would then interview with the client. Ms. Randles said that the client would pay HCP for the services she performed and that HCP would then pay her.

Linda Schay, HCP's president, testified that the caregivers are not required to be exclusively listed with HCP. She explained that the purpose of the non-compete clause was to prevent clients from hiring a caregiver without first paying the referral fee. She stated that there were instances where clients had bought out the non-compete clause. Ms. Schay did not think that the non-compete clause gave HCP control over the caregivers. During her testimony, Ms. Schay stated that HCP did not terminate the caregivers; she said that the client makes the decision to terminate. She also denied inspecting a client's home prior to making a referral.

The Board found that HCP satisfied the first and third statutory exemption requirements found in Ark. Code Ann. § 11-10-210(e) but failed to satisfy the second exemption requirement, found in section 11-10-210(e). Because HCP was unable to satisfy the second requirement, the Board ruled that HCP was liable for unemployment insurance taxes based upon the caregiver's remuneration. An appeal of the decision was brought before our court. In an unpublished opinion, we remanded the case back to the Board for a determination as to whether the remunerations constituted wages. *See Home Care Prof'ls of Ark. Inc. v. Director*, E04-280, slip op. at 3 (Ark. App. June 1, 2005). Upon remand, the Board found that the remunerations qualified as wages. From that decision HCP now brings this appeal.

On appeal, the findings of the Board of Review are conclusive if they are supported by substantial evidence. *Barb's 3-D Demo Serv. v. Director*, 69 Ark. App. 350, 13 S.W.3d 206 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review

the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Steinert v. Director*, 64 Ark. App. 122, 979 S.W.2d 908 (1998). Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

On appeal, HCP urges us to rule that the Board erred when it determined that the remunerated services of the caregivers using HCP as a source of referrals qualify as employment subject to the payment of unemployment insurance taxes. HCP specifically argues that the remuneration received by the caregivers does not constitute wages for the purpose of establishing unemployment insurance liability. In the alternative, HCP argues that, even if the caregiver remuneration qualifies as wages under the relevant statute, HCP bears no liability for unemployment insurance taxes because it satisfies all three statutory requirements for exemption.

Arkansas Code Annotated section 11-10-210(e) (Supp. 2005) provides:

> (e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:
>
> (1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact; and
>
> (2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and
>
> (3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

Subparagraphs (1) through (3) only apply when three precedent conditions are found to exist. *See Palmer's Boutique v. Arkansas Employment Sec. Div.*, 265 Ark. 571, 580 S.W.2d 683 (1979); *McCain v. Crossett Lumber Co.*, 206 Ark. 51, 174 S.W.2d 114 (1943). The

*precedent conditions are: (1) that services were performed; (2) by an individual; (3) for wages. Palmer's, supra; McCain, supra.*

HCP first argues that the remunerations were not wages. Wages are defined as "all remuneration paid for personal services, including, but not limited to, commissions, bonuses, cash value of all remuneration paid in any medium other than cash." Ark. Code Ann. § 11-10-215(a) (Supp. 2005). In making the determination if remuneration is paid, section 11-10-210(e) must be construed strictly against the State with any doubts being resolved in favor of the taxpayer. *Palmer's, supra.*

In its order finding that the remunerations qualified as wages, the Board wrote:

> [HCP's] own contract with its clients states that the client is paying [HCP] a "referral fee." After deducting its referral fee, [HCP] pays the balance to a caregiver for the caregiver's personal services rendered to the client. The caregivers are paid by [HCP] commensurate with the extent of services and hours of care they provide to [HCP's] clients. It is clear that the caregivers perform personal services for wages. Therefore, the Board finds that remuneration received by the caregivers qualifies as "wages" under Ark. Code Ann. § 11-10-215(a) and for purposes of Ark. Code Ann. § 11-10-210(e).

Viewing this in a light most favorable to the Board, we are unable to say that the Board's decision finding that the remunerations qualified as wages was not supported by substantial evidence. Accordingly, we affirm the Board's findings.

HCP further argues that, even if the caregivers' remunerations constituted wages for purposes of unemployment insurance tax liability, the Board erred when it found that it was unable to satisfy subparagraph (2) of the statutory exemption, *i.e.*, the service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed. In resolving this issue, the Board wrote:

> In the instant case, caring for the elderly is necessary to [HCP's] business, and thus providing in-home services is within [HCP's] usual course of business. Since the evidence does not establish that [HCP] receives a monetary benefit when a simple referral is made, but only when a service by a caregiver is performed for a client, a finding that providing in-home services is within [HCP's] usual course of business is particularly appropriate.

In regard to the place of business aspect of the second part of the test, an employer's place of business has been found to include not only the location of a business's office, but also the entire area in which a business conducts business. See Missouri Association of Realtors v. Division of Employment Security, 761 S.W.2d 660 (Mo. App. 1988); Employment Security Commission of Wyoming v. Laramie Cabs, Inc., 700 P.2d 399 (Wyo. 1985); and Vermont Institute of Community Involvement, Inc., v. Department of Employment Security, 436 A.2d 765 (Vt. 1981). More specifically, the representation of an entity's interest by an individual on a premises renders the premises a place of the employer's business. See Carpetland, [*Carpetland U.S.A. v. Illinois Dep't of Employment Security*, 206 Ill.2d 351, 776 N.E.2d 166 (Ill. 2002)]. In the instant case, the caregivers represent [HCP's] interest on the clients' premises, not just in a tangential fashion (e.g., satisfactory work by the caregiver may result in future referral), but in the most direct sense, that of performing the very service by which [HCP] profits.

Furthermore, HCP's Articles provide that its purpose is to provide home-care for the elderly. When we view the evidence in a light most favorable to the Board, we cannot say that the Board's decision is not supported by substantial evidence and we agree that HCP failed to satisfy subparagraph (2) of the statutory exemption. Because HCP fails to satisfy subparagraph (2), the caregivers are not independent contractors and HCP is not exempt from paying unemployment taxes. Therefore, we affirm the Board's decision.

Affirmed.

PITTMAN, C.J., and BIRD, GRIFFEN, ROAF, JJ., agree.

BAKER, J., dissents.

KAREN R. BAKER, Judge, dissenting. Two missteps in the majority's analysis prevent an accurate disposition of this case. First, the majority fails to address the Board of Review's misapplication of *Carpetland USA, Inc. v. Ill. Dept. of Empl. Sec.*, 776 N.E.2d 166 (Ill. 2002). The substantial-evidence standard is applicable only when the issue is one of fact. The rule has no application when the issue is one of law. *Arkansas Oklahoma Gas Corp. v. Director, Ark. Employment Sec. Dep't*, 80 Ark. App. 251, 94 S.W.3d 366, (2002). Second, the nature of the services provided by Home Care Profes-

sionals of Arkansas, Inc., to the clients and the nature of the services provided by the caregivers in the homes of the clients are fundamentally different.

The caregivers provide personal services of an intimate nature to the clients, such as bathing, dressing, and meal preparation. Home Care provides services to the client by compiling a list of potential caregivers and gathering information about those individuals in order to assist the client in selecting acceptable caregivers for such personal contact. Home Care also distributes payments to the various caregivers. Therefore, the services performed, which is the focus of the statutory analysis under section 11-10-210(e) (Supp. 2005), are fundamentally different.

The Board of Review found that Home Care Professionals, Inc., satisfied the first and third statutory exemption requirements found in Ark. Code Ann. § 11-10-210(e). Therefore, we begin with two premises: (1) The individual caregivers are free from the control and direction of Home Care in connection with the performance of the services provided in the client's homes, both under his or her contract for the performance of service and in fact; (2) Each individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed. In this case, the business of the same nature is home care for the elderly.

Our analysis must therefore focus on the Board's determination that the caregivers are representing Home Care's interest on the clients' premises because the caregivers are "performing the very service by which [HCP] profits." The Board, and the majority, relied upon the articles of incorporation for Home Care. These articles state that the purpose of the business is to provide home-care for the elderly. To reach the conclusion that the caregivers are performing the service by which Home Care profits, the Board relied upon *Carpetland, supra.*

In *Carpetland,* the business sold carpets with the added service of arranging for the installation of the carpet at the time of sale. Seventy-five percent of the company's business included the installation with the sale. The Illinois court found that the installers were independent contractors but applied a theory of delegation to find that the measurers for the carpet were not independent contractors:

> The situation with the measurers is not as clear cut. The report concludes that:

"Without accurate measurements, petitioner would have a difficult time finalizing its sales to the customers. The sales persons could and were encouraged to do the measurement, by making them pay half of the measurer's fees, but such demands on their time would reduce the volume of their sales. * * * Thus, the measurer's services were integrated into the petitioner's business and therefore were clearly within the usual course of, and in furtherance of the petitioner's business."

The Director concurred, noting that "the petitioner's sales-people, who are employees, can and often do the measuring themselves." The appellate court did not consider this factor. Calculating the price of goods is necessary to Carpetland's business. The salesperson cannot close the deal until he can multiply the square yardage of carpeting required by the price per square yard. The customer may provide the dimensions, in which case no measurement is needed. If not, it is the salesperson's responsibility to obtain the needed information. When one's employee is assigned the responsibility for a certain task, and has the choice between performing that task himself or delegating it to another, that task is clearly within the course of business for the employer. Thus, the measurers do perform a service within Carpetland's usual course of business.

*Carpetland*, 776 N. E. 2d at 187.

The Illinois court found that the employees of Carpetland were responsible for obtaining the measurements for the sale of the carpet. They could do that by receiving the measurements from the purchasers of the carpet, measuring the room themselves, or delegating that responsibility to the measurers. The nature of selling carpet required the determination of a specific amount of carpet to be sold because the sale could not be completed without a designated yardage. Because the measurements could only be obtained in the home of the purchaser, the home of the purchaser extended the place of business of Carpetland when Carpetland sent its employees or delegated the task to the measurers. Although Carpetland provided the service of arranging for the installation of the carpet, and seventy-five percent of their business included arranging for that service and installation was performed in the customer's home, the Illinois court found that the installers were independent contractors. The key to the distinction is the fact that Carpetland delegated the performance of its duty to measure.

For this analysis to apply here, Home Care must be contractually responsible to provide the personal services received by the clients and then delegate contractual responsibility to the caregivers. That is not the case. As the majority acknowledges, over the years, Home Care ceased directly providing home-care services for the elderly and evolved into a home-care referral service. The contractual responsibility of Home Care with the clients is to provide a list of individuals with whom the clients may negotiate and enter agreements for the care provided and the fees charged. Home Care enters into one contract with the caregiver and a separate and distinct contract with the client. The client and the caregiver are required by separate provisions not to enter into a private employment arrangement for twelve months from the last date worked by the caretaker. This provision in the contract with the client is titled "NON COMPENSATION" and reads as follows:

> Client agrees by entering into this agreement and accepting referrals from HCPA that he or she will not enter into private employment with referred caregiver for a period of twelve (12) months from the last due date referred by HCPA.

"Non compensation" is an accurate title for this provision. The client is not in competition with Home Care, its agent, for this information. The client specifically contracted with Home Care to provide a list of acceptable caregivers, and Home Care is under a contractual obligation to obtain, maintain, and supply the list of caregivers to the client.

The noncompetition provision in the contract between the caregiver and HCPA is specifically titled "NONCOMPETITION CLAUSE" and contains the following stipulation:

> The parties to the Contract agree that HCPA has a valid and legitimate interest in the protection of its customer base from appropriation. Therefore, in order to protect this interest, IC agrees by entering into this Agreement and accepting referrals by HCPA that he or she will not accept private employment from any Client of HCPA to whom he or she provided services for a period of twelve (12) months from the last due date of referral by HCPA.

In order to meet its client's needs, Home Care maintains a list of elderly people identifying their specific care needs. This list is compiled by a variety of means including interviews and home

inspections. Confidential business information such as these detailed customer lists is a protectable interest. *See Statco Wireless, LLC v. Southwestern Bell Wireless, LLC*, 80 Ark. App. 284, 95 S.W.3d 13 (2003). The agreement entered into by Home Care and the client is entitled "Home Care Contract" and states specifically that "[t]he provision of this Agreement shall govern the referral of a Caregiver in the performance of companion and home care." The paperwork presented to a potential caregiver states specifically that "Home Care Professionals of Arkansas, Inc. is the client or homeowners [sic] representative and will assist them in the business of caregiving."

The Board found that the caregivers represent Home Care's interest on the clients' premises because they are "performing the very service by which Home Care profits." That finding is not supported by the evidence. Home Care profits by providing information to clients who subsequently negotiate and agree with caregivers to provide and receive elder care. Providing information is one service in elder care. Personal services are of a different nature. Home Care is not contractually liable to perform any personal care to its clients. Instead, Home Care is contractually obligated to find acceptable people to provide the elder home care and contractually obligated to receive and disburse payment for that care. Home Care cannot legally delegate a duty it has no legal duty to perform.

The Board's reasoning that the caregivers represent Home Care's interest while in the client's home because Home Care profits from the services provided in the home is clearly wrong. The Illinois court in *Carpetland* rejected the assertion that the place of business extends to "any place where a worker performs agreed-upon services" for an employing unit finding that "if this were the test for place of business, the exception for independent contractors would cease to have any meaning because any place in which a worker performed an agreed-upon service, even his own home or office, would become the place of business of the party who hired him." *Carpetland*, 776 N.E.2d at 188. Even if the caregivers entered into a contractual relationship with Home Care to provide personal services in the home of the elderly, which they do not, the majority's opinion effectively eviscerates the exception.

Accordingly, I dissent.