MAMO TRANSPORTATION, INC. *v.* Artee WILLIAMS, Director, Department of Workforce Services

08-29                                                      289 S.W.3d 79

Supreme Court of Arkansas
Opinion delivered November 13, 2008

*Robinson, Staley, Marshall & Duke*, by: *Thomas B. Staley*, for appellant.

*Allan Pruitt*, for appellee.

Jɪᴍ GᴜɴᴛᴇR, Justice. This appeal arises from a decision of the Board of Review of the Arkansas Department of Workforce Services (the Board) finding that Appellant Mamo Transportation, Inc. (Mamo) is required to pay unemployment insurance taxes for services performed by drivers for wages because Mamo failed to meet the three-prong test set out in Ark. Code Ann. § 11-10-210(e) (Supp. 2007). We affirm the Board's decision.

Mamo is a Nevada corporation that provides a "drive-away" service in which it transports larger vehicles from a point of origin to a point of destination. Mamo is headquartered in Osceola, Indiana and operates throughout the forty-eight contiguous states and Canada. Mamo contracts with drivers to drive the vehicles. It has dispatch offices in Indiana, Pennsylvania, North Carolina, and Arkansas. Mamo's safety director testified that Mamo has 316 "independent contractors" on an active list. The driver calls Mamo if he or she wants to work driving a vehicle. The drivers do not contact customers directly, but provide services for customers obtained by Mamo. The price is negotiated between the driver and Mamo. If the driver makes the commitment to transport the vehicle, Mamo notifies the customer that a driver has been assigned to their load. Mamo gains a profit by paying the driver less

than what the customer pays Mamo. Mamo does not have exclusive agreements with its drivers. The drivers pay for their own training, although Mamo ensures that federal safety requirements are met. The drivers are free to drive the route decided upon by the driver; they provide their own transportation once a run is completed, pay for fuel and other expenses and provide tools which might be necessary.

Sylvia Jones-Allen, a resident of Arkansas, entered into an "Independent Contractor Driver Service Agreement" with Mamo. During her first ninety days driving for Mamo, Allen drove a 13'6" truck under an 11'8" bridge, causing $9,008 worth of damage to the truck. Mamo then terminated Allen's contract. On April 14, 2003, Allen filed a request for unemployment benefits. She indicated that she was an independent contractor on the unemployment forms. Mamo agreed that Allen was an independent contractor.

Upon review, the Arkansas Department of Workforce Services ("Department") determined that Mamo "exercised sufficient direction and control over the drivers and other workers to the degree necessary to establish an employer/employee relationship." Mamo requested a fact-finding hearing, contending that the factual determination made by the Department in applying Ark. Code Ann. § 11-10-210(e)(1), (2), and (3) was not supported by the facts and that the drivers and workers were not employees of Mamo. A hearing was conducted by the Board on October 19, 2004. The Board found that Mamo was a covered employer subject to the payment of unemployment insurance taxes because it failed to meet Ark. Code Ann. § 11-10-210(e)(2).

The Arkansas Court of Appeals affirmed the Board's decision. See *Mamo Transp. Inc. v. Director, Dept. of Workforce Services*, 101 Ark. App. 68, 270 S.W.3d 379 (2007). We granted Mamo's petition for review on May 15, 2008. Upon a petition for review, we consider a case as though it had been originally filed in this court. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008).

On appeal, Mamo argues that (1) the Board "ignored the plain, ordinary and common sense meaning of the language of the statute resulting in an absurd outcome not intended by the Arkansas legislature" and (2) the contractors at issue were independent contractors not subject to Arkansas unemployment taxes. Mamo specifically argues that the Arkansas legislature did not

intend for the language of Ark. Code Ann. § 11-10-210(e)(2) to describe every road and highway in the United States and Canada as a "place of business" of Mamo. In response, the Department contends that the Board's decision is supported by substantial evidence and complies with Ark. Code Ann. § 11-10-210.

We affirm the decision of the Board of Review if it is supported by substantial evidence. *Coker v. Director*, 99 Ark. App. 455, 262 S.W.3d 175 (2007). Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Id.* We view the evidence and all reasonable inferences deducible there from in the light most favorable to the Board's findings. *Id.* Even if the evidence could support a different decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. *Id.*

In this case, we are called upon to construe provisions of Arkansas Code Annotated section 11-10-210. We review issues of statutory construction de novo. *Ark. Comprehensive Health Ins. Pool v. Denton*, 374 Ark. 162, 286 S.W.3d 698 (2008). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.* However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Id.* This court seeks to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Id.*

Arkansas Code Annotated § 11-10-210(e) states:

(e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:

(1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact; and

(2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

(3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

*Id.* According to the statute, an employment relationship exists unless all three of the above elements are met. Here, the Board concluded that the first element was met, the second element was not met, and did not rule on the third element. Therefore, we are limited in our review to § 11-10-210(e)(2).

The Board concluded that Mamo failed to meet the second requirement of § 11-10-210(e) in that the course of business for both Mamo and the drivers is providing the delivery of vehicles, and Mamo's places of business consist of not only its office, but also the roadways on which the drivers transport the vehicles. On appeal, Mamo presents no argument that the Board was incorrect in finding that delivery of the vehicles was in the course of Mamo's business, so we will only address whether the Board erred in its finding regarding Mamo's place of business.

Looking at the language of the statute, the second prong is not met unless the service is performed outside of all the places of business of the enterprise for which the service is performed. Mamo provides a "drive-away" service for its customers by transporting various types of vehicles throughout the United States and Canada. Its business is to take vehicles from origin to destination. Therefore, the "enterprise for which the service is performed" in this case is the transportation of vehicles. *Black's Law Dictionary* 1169 (7th ed. 1999) defines "place of business" as "a location at which one carries on a business."

The Board relied on *Home Care Professionals of Arkansas, Inc. v. Williams*, 95 Ark. App. 194, 235 S.W.3d 536 (2006), in making its determination that Mamo's places of business include the roadways. In *Home Care Professionals*, the court of appeals held that Home Care Professionals (HCP) failed to meet the second prong of the statute. HCP was a home-care referral service. HCP maintained a list of caregivers who were able to provide home-care services. Once HCP received a request for a service from a client, HCP would find a caregiver willing to perform the service. The

caregiver would sign an independent contract. The client and caregiver would negotiate a schedule and the terms of the caregiver's engagement. Once the caregiver completed the service, the caregiver would turn in a time sheet and be paid by HCP the amount paid by the client minus HCP's referral fee. In holding that HCP's caregivers were not independent contractors, the court of appeals stated:

> In regard to the place of business aspect of the second part of the test, an employer's place of business has been found to include not only the location of a business's office, but also the entire area in which a business conducts business. *See Missouri Association of Realtors v. Division of Employment Security*, 761 S.W.2d 660 (Mo. App. 1988); *Employment Security Commission of Wyoming v. Laramie Cabs, Inc.*, 700 P.2d 399 (Wyo. 1985); and *Vermont Institute of Community Involvement, Inc. v. Department of Employment Security*, 436 A.2d 765 (Vt. 1981). More specifically, the representation of an entity's interest by an individual on a premises renders the premises a place of the employer's business. *See Carpetland*, [*Carpetland U.S.A. v. Illinois Dep't of Employment Security*, 201 Ill.2d 351, 776 N.E.2d 166 (2002)].

*Home Care Prof'ls*, 95 Ark. App. at 199, 235 S.W.3d at 540-41. Other states with statutes almost identical to § 11-10-210 have addressed the issue of what constitutes a "place of business." In *Chicago Messenger Service v. Jordan*, 825 N.E.2d 315 (Ill. Ct. App. 2005), the appellate court of Illinois held that an employer's couriers were employees, rather than independent contractors, for the purposes of the Unemployment Insurance Act. The court stated:

> Finally, we reject CMS' claim that it is merely a broker of delivery service. This is essentially the same argument that was made by the limousine company and rejected in *O'Hare-Midway*. Here, the usual course of business involved the pickup and delivery of packages by the couriers, similar to the pickup of passengers that was the usual course of business in *O'Hare-Midway*. As we have already noted, the couriers' service is performed by transporting the packages, like the limousine passengers, from one location to another. Again, it stands to reason that the company's interests are represented during the performance of that service and that the place of business includes travel between one location and another. Therefore, the couriers perform their services on the roadways, which are, then, for purposes of section

212(B), the place of business. *See O'Hare-Midway*, 232 Ill. App. 3d at 113, 173 Ill. Dec. 171, 596 N.E.2d 795.

*Chicago Messenger Serv.*, 825 N.E.2d at 328. Similarly, in *O'Hare-Midway Limousine Service v. Baker*, 596 N.E.2d 795 (Ill. App. Ct. 1992), the Illinois Appellate Court found that, because chauffeurs represented the interests of the limousine company whenever they picked up passengers, the usual course of business was on the roadways traveled.

The Supreme Court of Wyoming also addressed the place-of-business issue in *Employment Security Commission of Wyoming v. Laramie Cabs, Inc.*, 700 P.2d 399 (Wyo. 1985), in which the court interpreted a statute similar to § 11-10-210. The court found that a taxicab company's business consisted of providing transportation to customers by leasing taxicabs to drivers. The court held that the taxicabs themselves must be considered the company's place of business because "the essence of Laramie Cabs' business is conducted in cabs between the customer's origin and destination, not in the company office." *Laramie Cabs*, 700 P.2d at 407.

For the purpose of defining terms under Ark. Code Ann. § 11-10-210, we hold that "place of business" is the place where the enterprise is performed. An enterprise's place of business must be decided on a case-by-case basis. In *Home Care Professionals*, the home-care service was performed in the customer's home; in *O'Hare-Midway*, the limousine service was performed on the roadways traveled; in *Chicago Messenger Service*, the service of transporting packages was performed on the roadways; in *Laramie Cabs*, the taxicab service was performed in the taxicab itself. Here, Mamo's enterprise, transporting vehicles, is performed in the vehicle itself between the point of origin and the point of destination. As in *Home Care*, the enterprise for which the service is performed takes place within the property of the customer. Under the facts in this case, we hold that, in addition to the physical locations of its dispatch offices, Mamo's places of business include the location of the transported vehicle.

Because Mamo has failed to meet its burden set out in § 11-10-210(e), it is not exempt from paying unemployment insurance taxes on its drivers. The Board was correct in its decision that Mamo's drivers "do not perform their services outside of all the places of Mamo's business." However, we hold that Mamo's enterprise takes place inside the trucks, rather than on the road-

ways. Accordingly, we affirm the result reached by the Board, even though it announced the wrong reason. *See Hardy v. Wilbourne*, 370 Ark. 359, 259 S.W.3d 405 (2007).

Affirmed.

CORBIN and DANIELSON, JJ., concur.

BROWN, J., dissents.

PAUL E. DANIELSON, Justice, concurring. I concur in the decision to affirm the Board's decision, but would do so using the same rationale as the Board. As evidenced by its own representative's testimony, Mamo is in the business of providing its clients transportation of the clients' vehicles. Thus, its enterprise for which the service is performed is, in fact, transportation.

While Mamo has four main offices from which it dispatches drivers to provide Mamo's transportation service to its clients, it is my opinion that "all the places of business," in this case, would encompass the roadways on which Mamo's drivers travel. Nothing is unclear about the term "place of business." Indeed, *Black's Law Dictionary* defines the term as "[a] location in which one carries on a business." *Black's Law Dictionary* 1187 (8th ed. 2004). That differs from a business's "principal place of business," which is defined as "[t]he place of a corporation's chief executive offices, which is typically viewed as the nerve center." *Id.* Accordingly, the term "all the places of business" encompasses *wherever* the business's services are performed. Here, "all the places of business" includes the roadways.

In the instant case, the service being provided by Mamo, transportation, necessarily takes place on the roadways or airways. Transportation, by its nature, does not occur in one physical location or place of business. It simply is a different creature from the typical business venture. Indeed, a "place of business" determination will vary from case to case depending on the business in which the employer is engaged. Here, all the places of business includes the roadways, as found by the Board. *See, e.g.*, *Vermont Inst. of Cmty. Involvement v. Dep't of Employment Sec.*, 140 Vt. 94, 436 A.2d 765 (1981) (observing that an employer's place of business includes not only the location of its offices, but also the entire area in which it conducts business). Because there was substantial evidence to support the Board's decision, I would affirm.

CORBIN, J., joins.

R OBERT L. BROWN, Justice, dissenting. I write to draw the General Assembly's attention to the fact that confusion abounds in this case over what section 11-10-210(e)(2) means and over where the places of business of Mamo Transportation are for the enterprise of transporting large vehicles. Four justices apparently believe that *all* transporting vehicles used by *all* independent contractors contracting with Mamo are Mamo's "places of business." Two justices interpret "places of business" even more expansively to include every inch of roadway where the transporting vehicle used by independent contractors is traveling. In other words, the entire road system traversed by every transporting vehicle is a place of business for Mamo. I interpret places of business to be those locations where Mamo actually conducts its business, which includes its headquarters in Indiana and its four dispatch offices.

Though, admittedly, there is a conflict of authority in foreign jurisdictions, the reasoning of the Massachusetts Supreme Judicial Court is persuasive to me in defining places of business. *See Athol Daily News v. Bd. of Review of the Div. of Employment & Training*, 786 N.E.2d 365 (Mass. 2003). In *Athol*, the issue was whether unemployment compensation benefits should be paid to adult newspaper deliverers who delivered newspapers house to house and elsewhere. The Supreme Judicial Court of Massachusetts interpreted the same "places of business" language as we have in our Code and denied benefits. The court had this to say:

> The division's assertion that the News's "places of business," for purposes of the second part of the ABC test, includes the geographic area tracked by all of the News's delivery routes, is illogical. The one decision cited by the division in support of its position, *Richardson Bros. v. Board of Review of Dep't of Employment Sec.*, 198 Ill.App.3d 422, 144 Ill.Dec. 607, 555 N.E.2d 1126 (1990), concerned truck drivers who distributed garden plants to retail outlets, and not carriers who deliver newspapers to private homes. To the extent that language employed by the Illinois court suggests that a newspaper delivery route is a newspaper company's place of business for purposes of G.L. c. 151A, we respectfully disagree. *See id.* at 430, 144 Ill.Dec. 607, 555 N.E.2d 1126, citing *Eutectic Welding Alloys Corp. v. Rauch*, 1 Ill.2d 328, 115 N.E.2d 898 (1953) ("where an employing unit assigns a specific area to an individual for the purpose of selling its product ... that area is the place of business of the enterprise").

*Athol*, 786 N.E.2d at 372 n.11.

Similarly, the Appeals Court of Massachusetts, Suffolk, interpreted this same language in connection with taxicab drivers who were independent contractors and dispatched from the business premises of Town Taxi. *See Comm'r of the Div. of Unemployment Assistance v. Town Taxi of Cape Cod, Inc.*, 862 N.E.2d 430 (Mass. App. Ct. 2007). In holding that places of business did not include taxi cab routes, the court said:

> The service performed by the drivers occurred outside the business premises of Town Taxi. Although the taxicabs were stored and the dispatch system was operated at the business premises of Town Taxi, the drivers did not transport customers on those premises. Compare *Althol Daily News*, 439 Mass. at 179, 786 N.E.2d 365 (where carriers picked up newspapers from employer's distribution center and delivered them to individual houses, stores, bundle drops, or vending machines, "all of the carriers ma[d]e deliveries outside of premises owned by the [employer] or which could fairly be deemed its 'place of business' ").

*Town Taxi*, 862 N.E.2d at 435.

Nor does the court of appeals case in *Home Health Care Professionals of Arkansas, Inc. v. Williams*, 95 Ark. App. 194, 235 S.W.2d 836 (2006), give the majority the "cover" it would like. In that case, caregivers provided a fixed service at a fixed location, the patient's home, and the court of appeals held that the home locations were places of business of the Home Health Care enterprise. In the case before us, however, under the majority's interpretation, Mamo's places of business along any roadway would be all transporting vehicles for as long as it took the independent contractors to travel to their destinations. That interpretation is excessively broad and, to use the language of the Massachusetts Supreme Judicial Court, "illogical."

It is clear to me that the General Assembly drew a distinction in section 11-10-210(e)(2) between where the service is being performed, which could include the roadways on the one hand, and "places of business of the enterprise for which the service is performed," which are obviously the premises, on the other. Ark. Code Ann. § 11-10-210(e)(2) (Repl. 2002). Yet the majority opinion conflates the two, which adds to the confusion.

At oral argument before this court, counsel for the Department of Workforce Services admitted that this issue had been difficult for his agency and "a tough one," as he put it. While

providing unemployment benefits is a worthy purpose, the qualifying factors, it is submitted, should be established by the General Assembly and not by an overbroad and illogical interpretation by the courts.

I respectfully dissent.