

# ARKANSAS COURT OF APPEALS

DIVISION I
No. E-13-1204

| | |
|---|---|
| CLIFTON SERVICES, INC.<br>APPELLANT | **Opinion Delivered** October 22, 2014 |
| | APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW |
| V. | [NO. 2011-BR-5 EC] |
| DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES,<br>EMPLOYER CONTRIBUTIONS UNIT<br>APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

This is an appeal from a determination by the Board of Review ("Board") that appellant Clifton Services, Inc., was the employer of Jerome Allen and thus subject to the payment of unemployment-insurance taxes pursuant to Arkansas Code Annotated section 11-10-210(e) (Repl. 2012). Clifton Services raises two arguments on appeal. It first contends that the Board erroneously determined that it was Allen's employer. Second, it argues that the Board and the Director of the Department of Workforce Services improperly relied on an unpublished Board of Review decision in reaching their determinations. We find no error and affirm.

The appellate courts will affirm the decision of the Board of Review if it is supported by substantial evidence. *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008);

*W. Land Servs., Inc. v. Dir.*, 2012 Ark. App. 161. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Mamo Transp.*, *supra*. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if the evidence could support a different decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. *Id.*

The issue presented in this case involves a relationship between Clifton Services, truck driver Jerome Allen, and a third business entity named Builder's Transportation Co. ("Builder's"). Clifton Services, which is owned by Tommy Clifton, entered into a "lease purchase contract" with Allen whereby Allen agreed to purchase a truck tractor from Clifton Services. Under the terms of the contract, Allen would make 175 weekly lease payments of $375 until the purchase price of $65,625 was paid, at which time Clifton Services would transfer title of the truck to Allen. Allen was given possession of the truck, was responsible for the upkeep and maintenance of the truck, and had the right to determine "the means of performance to its lessee motor carrier," including matters like travel routes and whether to accept a dispatch. Allen would remain in possession of the truck so long as he did not default on his payments. In the event of default, however, Clifton Services could repossess the truck.

Regarding payments and default, Allen agreed to "execute an assignment as to all income derived from operation of the leased vehicle in favor of [Clifton Services]" and agreed that Clifton Services could "deduct all lease payments," as well as amounts sufficient

to cover license fees and highway-use taxes, from the income that Allen earned by operating the truck. The agreement also contained the following provision:

> Purchaser [Allen] understands that the total earnings of the truck are covered by a lease to a motor carrier. Purchaser may lease the truck to a motor carrier chosen by Purchaser, but agrees to the requirement for an assignment of income to Seller to protect Seller's interest. In the event Purchaser leases the truck to a motor carrier which will not accept assignment of the income, Seller reserves the right to terminate this agreement upon the giving of two weeks' notice to Purchaser.

At the time of signing the agreement, Builder's was the only trucking company that would agree to the income-assignment requirement.

Allen thus leased the truck to Builder's. Builder's would send dispatches to Allen, who would then deliver the load to its destination in the truck that was the subject of the lease-purchase agreement. When it came time to pay Allen, Builder's would write a check to Clifton Services, and Clifton Services would withhold the lease payment on the truck and other expenses and remit the remainder to Allen. Of the payment made to Builder's for any given load, Allen received 65%, Builder's kept 20%, and Clifton Services kept 15%.[1]

Allen's lease agreement with Builder's was terminated after he was involved in a wreck in which the truck was totaled. After termination, Allen sought unemployment benefits. In response, Clifton Services asserted that Allen was not an employee but rather was an independent contractor. After an investigation, the Department of Workforce Services determined that Clifton Services was, in fact, Allen's employer and that it should have been

---

[1]The percentage retained by Clifton Services was for a separate lease agreement that it had with Builder's concerning trailers, independent of the withholdings from Allen's percentage for truck payments and other expenses.

SLIP OPINION

paying unemployment-insurance taxes. Clifton Services requested a hearing for a determination of coverage. Following that hearing, the Director concluded that Clifton Services was Allen's employer and was thus liable for unemployment-insurance taxes. Clifton Services appealed that decision to the Board of Review, which affirmed. Clifton Services now appeals the Board's decision to this court.

On appeal, Clifton Services argues that the Board erred in finding that it was Allen's employer. The determination of whether an individual is an employee is governed by Arkansas Code Annotated section 11–10–210(e), which provides as follows:

> Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:
>
> (1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact;
>
> (2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside all the places of business of the enterprise for which the service is performed; and
>
> (3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

In order to obtain the exemption contained in section 11–10–210(e), the employer must prove each of subsections (e)(1) through (3). *Stepherson v. Dir.*, 49 Ark. App. 52, 895 S.W.2d 950 (1995); *Am. Transp. Corp. v. Dir.*, 39 Ark. App. 104, 840 S.W.2d 198 (1992); *Morris v. Everett*, 7 Ark. App. 243, 245, 647 S.W.2d 476, 477 (1983) (noting the 1971 amendment to the statute that made the provisions conjunctive and commenting that, by the

4

amendment, the General Assembly "obviously intended to make it more difficult to claim an exemption under our Employment Security Act"). If there is substantial evidence to support the fact-finder's finding that any one of the three requirements is not met, the case must be affirmed. *W. Land Servs.*, *supra*.

We hold that there is substantial evidence to support the Board of Review's finding that Clifton Services exercised "significant control" over Allen under section 11-10-210(e)(1) and that Clifton Services failed to rebut the statutory presumption. In theory, Allen was able to haul loads for whomever he wanted. In practice, however, Clifton Services was in control. Clifton Services would not sell Allen the tractor unless he leased it to a third-party trucking company that would agree to a wage assignment. As Builder's was the only company that had agreed to that kind of assignment, Allen was limited to working only with Builder's, a company with whom Clifton Services had a separate financial arrangement for the leasing of trailers. In essence, Clifton Services controlled and selected which motor carriers Allen could or could not use. Finally, Allen's paycheck was directly controlled by Clifton Services: Clifton Services deducted payments for the truck and other expenses from Allen's check, and if Allen did not earn a paycheck by working for Builder's and thus missed payments on the truck, Clifton Services would repossess the vehicle.

This court has addressed a similar situation before. In *Steinert v. Director*, 64 Ark. App. 122, 979 S.W.2d 908 (1998), the trucking-company owner testified that it was "rare" for his drivers to drive for other trucking companies. The owner also entered into lease-purchase agreements with his drivers, and the drivers owed him 25% of the total load for each trailer.

5

*Steinert*, 64 Ark. App. at 125–26, 979 S.W.2d at 909–10. On those facts, this court held that there was evidence to support the Board's finding that the trucking company was an employer due to its control and direction over its drivers. We reach the same conclusion here. Moreover, because the Board's finding that Clifton Services failed to satisfy the first prong of section 11-10-210(e) is supported by substantial evidence, it is unnecessary to address the Board's findings as to the other prongs of the test. *See Stephenson*, 49 Ark. App. at 55, 895 S.W.2d at 952.

In its second argument on appeal, Clifton Services maintains that the Director and the Board committed reversible error when they relied on an unpublished Board opinion in a previous case.[2] We disagree. Based on Tommy Clifton's testimony before the Board alone, there was substantial evidence to support the Board's decision that Clifton Services was an employer pursuant to section 11-10-210(e). The Board's reliance on the earlier case was thus not prejudicial, and Clifton Services's arguments to the contrary are unavailing.

Affirmed.

GRUBER and VAUGHT, JJ., agree.
*Jensen Young & Houston, PLLC*, by: *Brent D. Houston*, for appellant.
*Phyllis A. Edwards*, for appellee.

---

[2]In the Director's opinion, Appeal No. 88-BR-2 was mentioned in a footnote. In that case, the Board issued a determination of coverage as to "Clifton Trucking" and concluded that Clifton Trucking was an "employer" subject to the payment of unemployment-insurance taxes. In the instant case, the Director found that the previous appeal "should be considered as persuasive authority if not precedential." Clifton Services argues that it was never provided with notice that the previous case would be relied on, let alone provided a copy of the decision, and was thus unfairly prejudiced by the Director's and the Board's reliance on the earlier case.