# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** E–14–224

| | |
|---|---|
| TNT CABLE CONTRACTORS, INC.<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, AND CHRIS SINGLETON<br><br>APPELLEES | **Opinion Delivered** FEBRUARY 11, 2015<br><br>APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2013-BR-04-EC]<br><br>AFFIRMED |

**DAVID M. GLOVER, Judge**

TNT Cable Contractors, Inc., appeals from the Board of Review's decision that the services performed by Chris Singleton (see companion case of this date) and other similarly situated TNT workers are subject to the payment of unemployment-insurance taxes. TNT challenges the Board's decision, contending that Singleton and all other similarly situated workers perform services for TNT as independent contractors, not as employees. We affirm.

*Background*

Chris Singleton performed cable-installation and other services for TNT. When his work relationship with the company ended, he applied for unemployment benefits, which prompted an investigation by the Arkansas Department of Workforce Services (ADWS) concerning TNT's classification of cable installers as independent contractors, rather than as employees. Following its investigation, the ADWS issued its unemployment tax

determination letter of liability on January 9, 2013, concluding that TNT had misclassified Singleton and all other similarly situated workers as independent contractors when they should have been classified as employees. ADWS ordered TNT to report these workers' wages to ADWS and tax them appropriately.

TNT then timely requested an administrative determination of coverage pursuant to Arkansas Code Annotated section 11-10-308 (Repl. 2012). Following a July 25, 2013 hearing, the decision of ADWS Director Artee Williams agreed with the initial agency determination that TNT's relationship with Singleton and all other similarly situated workers constituted covered employment, resulting in wages subject to the payment of unemployment-insurance taxes. TNT then appealed the Director's decision to the Board of Review. It, too, affirmed the employee classification, and this appeal followed. TNT challenges the Board's decision, contending that the services performed by Singleton and other similarly situated workers were those of independent contractors, not employees, and therefore not subject to unemployment taxes. We do not agree.

*Standard of Review*

Appellate courts will affirm a Board of Review decision if it is supported by substantial evidence. *Clifton Servs., Inc. v. Dep't of Workforce Servs.*, 2014 Ark. App. 562, 445 S.W.3d 538. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Id.* We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even if the evidence could support a different decision, our review is limited to whether the Board could

have reasonably reached its decision based on the evidence presented.  *Id.*

*Arkansas Code Annotated section 11-10-210(e)*

Under our statutes, the Board of Review begins with a presumption of coverage for unemployment-insurance purposes.  Arkansas Code Annotated section 11–10–210(e) (Supp. 2013) sets forth the factors that must be proved by an employer in order to overcome the presumption that services performed by an individual for wages are deemed to be employment:

> (e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, *unless and until* it is shown to the satisfaction of the director that:
>
> (1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact;
>
> (2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside all the places of business of the enterprise for which the service is performed; and
>
> (3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

(Emphasis added.)   According to the statute, an employment relationship exists unless all three of the above elements are met.  *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008).

In the instant case, the Board concluded that TNT failed to establish the second prong of the three-part statutory test; i.e., that the "service is performed either outside the usual course of the business for which the service is performed or is performed outside all the

places of business of the enterprise for which the service is performed." The Board explained in its decision:

> Singleton's services and those of similarly situated individuals, as installers[,] fail to meet the second prong of the three part test. TNT is not simply a referral service. It appears that it is being paid by Cox for installation jobs. TNT is paid for the installation and TNT pays the installers a lower rate than what Cox pays TNT. TNT is not paid until the installation is complete. The installers are an integral part of completing those installations. Thus, the services are not "outside the usual course of the business for which the service is performed." Moreover, they are not outside all the places of business of the enterprise for which the service is performed as the places of business would encompass the locations of the installation and the roadways between them. *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008).
>
> . . . .
>
> The claimant was paid by TNT for his personal services to TNT for his installation work. The pay was based on a rate set by Cox, apparently based on the time estimated to complete a particular task. The Board finds that the remuneration paid by TNT to Singleton and similarly situated individuals constitutes "wages" for unemployment insurance purposes. TNT has not shown that the workers met the second prong of the test for independent contractors. Since the second prong of the test has not been satisfied, it is not necessary to address whether the other two prongs might be satisfied. The wording of the law requires that all three prongs be met in order to exempt the workers from covered employment.

TNT contends that it is neither a cable installer nor a cable provider; that it merely locates skilled cable installers on behalf of cable installers; that its business is sourcing labor, not installing cable; and that it is simply a referral service. As set forth above, the Board's decision specifically rejected this limited characterization, concluding that TNT was not simply a referral service.

The only evidence that is really pertinent in this appeal is evidence that supports the Board's decision that the second prong was not satisfied. If reasonable minds can accept the evidence as adequate to support the conclusion that the service performed by the installers

was either outside the usual course of the business for which the service was performed or it was performed outside of all the places of business of the enterprise for which the service is performed, then this court must affirm the Board—even if the evidence could also support a different decision.

The evidence that was clearly important to the Board in reaching its decision was undisputed. TNT was not paid until the cable installation was complete. The Board, therefore, reasoned that Cox was paying TNT for installation jobs, not simply for referrals, making the installers an integral part of completing those installations and part of the ususal course of the business for which the service was performed—not outside that course of business. Based upon the evidence before the Board, and viewing that evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings, we are not able to say that reasonable minds could not reach the same conclusion the Board did; i.e., that TNT did not overcome the presumption that the services performed by Singleton and other similarly situated workers was that of employees rather than independent contractors because TNT did not establish the second prong of the three-part test. We therefore affirm.

Affirmed.

ABRAMSON, J., agrees.

HARRISON, J., concurs.

**BRANDON J. HARRISON, Judge, concurring.** I agree with my colleagues' decision to affirm this case. I write separately to express some concern about the hazy statute on which the Board of Review decided the issue this appeal presents and to explain why I join to affirm.

As my colleagues have stated, TNT styles itself as a "broker" that locates cable installers for corporate clients, like Cox Communication. The installers—which TNT firmly argues are independent contractors—install cable and other technical services, like telephones and internet connections. According to TNT, once it hires an installer to perform a particular job, the installer may in turn hire additional help, even swap jobs with other installers, without TNT's permission or knowledge. TNT also provided testimony and evidence that the installers with whom it associates must provide and pay for their trucks, tools, fuel, and other business-related expenses. According to Chris Brown, a cable installer who has worked with TNT and testified before the hearing officer, he spends up to $20,000–$25,000 on business expenses each year. The installers may also, at their sole discretion, accept or reject any job that TNT posts without adverse consequences from TNT; and they may even work for TNT's competitors. Or so TNT contends, and there really was no material, countervailing proof in the record.

This case hinges on the Board's decision that TNT failed to rebut a statutory presumption that the laborers TNT characterizes as independent contractors are employees for Department of Workforce Service purposes. In particular, the Board found that TNT failed to rebut Ark. Code Ann. § 11–10–210(e)(2) (Supp. 2013). Subsection (e)(2) states:

> The service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed[.]

TNT argues, among other things, that the Department erred because it did not use a "comparative approach" to determine whether TNT satisfied subsection (e)(2). The argument is that the Department's website lists a number of factors that it purportedly considers when deciding whether a person is an employee, and the Department in this case admittedly did not apply the factors to TNT. Our supreme court, however, has not required the Department to do what TNT in part contends that it should have done; the focus has been, for better or worse, on section 11-10-210's elements. *See Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 101, 289 S.W.3d 79, 83 (2008) ("employment relationship exists unless all three of the [statutory] elements are met"). So TNT had to persuade the Department that it was exempt because the installers at issue in this case either performed services "outside the usual *course* of the business" or "outside all the *places* of business." Ark. Code Ann. § 11-10-210(e)(2) (emphasis added).

In *Mamo Transportation, Inc. v. Williams*, the Department and a transportation company tussled over whether drivers the transport company used to move vehicles across the country were employees or independent contractors. Our supreme court interpreted the "places of business" phrase to mean "all the places of business of the enterprise for which the service is performed." 375 Ark. at 101, 289 S.W.3d at 84. The court also stated that "[a]n enterprise's place of business must be decided on a case-by-case basis." *Id.* at 103, 289 S.W.3d at 85. The supreme court interpreted Mamo's place of business to include all the roadways upon which its drivers travelled and the vehicles in which the

drivers travelled. In *Home Care Professionals of Arkansas, Inc. v. Williams*, this court held that a business providing home care for the elderly had its place of business in the customers' homes. 95 Ark. App. 194, 199, 235 S.W.3d 536, 541 (2006). In *O'Dell v. Director, Department of Workforce Services*, we reversed the Board of Review's decision, in part, because it misapplied *Mamo* and the evidence showed that a medical transcriptionist who contracted out extra work she had to additional typists did not dictate where the work must be done and that no alternative places of business were necessary to fulfill the enterprise's purpose. 2014 Ark. App. 504, 442 S.W.3d 897.

So the caselaw has seemingly given subsection (e)(2) a reach that Plastic Man would envy. The long reach, as a practical matter, makes it difficult for a business entity to successfully claim that it associates independent contractors, not hires employees, for Department of Workforce Services purposes. Perhaps that is precisely what the General Assembly intended. Whether the subsection's reach has extended beyond a prudent boundary is a question that our supreme court or legislature may be asked to decide in due course. Today, however, I cannot say that the Board erred in finding that TNT failed to prove that the places where the installers it schedules perform their services are "outside all the *places* of business," given how the courts have applied subsection (e)(2).

Whether TNT-affiliated installers provide services "outside the usual *course* of the business" is a closer call. In *Mamo*, the supreme court did not address the "course of business" phrase; it addressed the "place of business" phrase. 375 Ark. at 101, 289 S.W.3d at 84. TNT argues that it satisfied subsection (e)(2) because its contractors' course of business is different that TNT's. As has been said, according to TNT, its client (primarily

Cox) is in the business of providing cable services, and it (TNT) is a "broker" of services that allows independent contractors to install Cox's cable service. In this vein, TNT insists that it does not install cable, it just sources labor.

The Board rejected TNT's distinction because it found that cable installation was a key part of how TNT operated and made money. "TNT is paid for the installation [by Cox] and TNT pays the installers a lower rate than what Cox pays TNT . . . . The installers are an integral part of completing those installations," the Board concluded. This statement is the reason the Board provided on why it rejected TNT's argument regarding subsection (e)(2).

I agree that we may affirm because the Board's conclusion that TNT is not a mere broker, but a cable-installation business, is supportable under our standard of review. But the decision for me is a close one. To the extent TNT argues that the Board considered an irrelevant factor—the irrelevancy being who sets the rate of pay—I tend to agree with TNT that the rate of pay and the timing of when installers get paid should not primarily fuel the subsection (e)(2) analysis. Who gets paid what, when, and by whom, clearly matters when asking whether "wages" were paid; and the topic of wages is important because a finding that wages are paid is a condition precedent to applying section 11-10-210(e)(1)−(3). It's not clear to me why the Board's point here means that TNT failed to rebut subsection (e)(2).

I opened, and now close, with the notion that subsection (e)(2) not only lacks clarity of expression, though it does in a material way, but also that it is not obvious what real-world business enterprise could escape subsection (e)(2)'s reach. Despite Justice

4

Brown's dissent in *Mamo* and (now) Justice Baker's dissent in *Home Care Professionals*—both of which can be read as signaling an alarm that the Department is too strenuously applying subsection (e)(2)—the law as it stands today seems to impel that we affirm the Board's decision.

I therefore agree to affirm the Board of Review's decision.

*K & L Gates LLP*, by: *John M. Farrell*; and

*Kutak Rock LLP*, by: *James M. Gary*, for appellant.

*Phyllis A. Edwards*, for appellee.